UNITED STATES *v.* SAUNDERS *et al.* (No. 1329).[1]

TRANSFER OF CAUSE FROM ONE BOARD TO ANOTHER.

In this cause the only warrant that Board 1 had for deciding the question at issue was a so-called order of transfer made by the president of the Board of General Appraisers. This order was made after and not before trial, as prescribed by statute, and it conferred no authority on Board 1 to determine the issues involved in the protests. Moreover, as appears from the record, no opportunity was given, either to the Government or the importers, to appear and be heard.

## United States Court of Customs Appeals, May 4, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34156 (T. D. 33934).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

In this case the collectors of customs at the ports of Buffalo and Ogdensburg, N. Y., classified certain scrap leather as waste not specially provided for and assessed it for duty at 10 per cent ad valorem under paragraph 479 of the tariff act of 1909. The importers claimed that the goods were free of duty under paragraph 581 as manures or substances used only for manure. The protest came on for hearing before Board 3 on June 18, 1913, at which time, the Government and the importers being represented by counsel, a trial of the issues presented by the protest was had and the matter submitted for decision. After the trial and submission of the case, for some reason not set out in the record, the whole proceeding was transferred to Board 1, which, apparently without a trial and without giving either of the parties any opportunity to be heard, rendered a decision sustaining the protests. From the decision of Board 1 the Government took an appeal to this court and now contends that Board 1 was without jurisdiction of the matter and that therefore its decision is wholly invalid and void. We think the Government's contention must be sustained. Section 28, subsection 12, of the tariff act of 1909 provides for the appointment of nine general appraisers of merchandise by the President, by and with the consent of the Senate, and requires that "said general appraisers of merchandise shall be divided into three boards of three members each, to be denominated, respectively, Board 1, Board 2, and Board 3."

Under the provisions of the section just referred to, all notices in writing of dissatisfaction with the collector's decision, together with the invoices and all papers and exhibits, are required to be forwarded to the board of nine general appraisers, to be assigned by rule thereof for hearing or determination or both, and each board

of three general appraisers or a majority thereof is clothed with full power to hear and determine all questions arising therein or assigned thereto. Under the same provision the president of the board of nine general appraisers may at any time *before trial,* under the rules of the board, assign or reassign any case for hearing, determination, or both. If, therefore, the case at bar originally arose in Board 3, or was assigned thereto, that board had jurisdiction not only to hear but also to determine and decide the matter, and that necessarily implied that none of the other boards was vested with authority either to try or decide the issues which the protests presented. It is true that by virtue of the very same section the president of the board of nine general appraisers may at any time *before trial,* under the rules of the board of nine general appraisers, assign or reassign any case for hearing, determination, or both, but neither that provision nor any other that we can find contemplates that the trial of a case may be had by one board and that it may be then reassigned or transferred to another for decision.

Section 14 of the customs administrative act of June 10, 1890, of which subsection 14 of section 28 of the act of 1909 is the successor, provided, among other things, that upon notice to the collector that the importer, consignee, or agent of imported merchandise was dissatisfied with the rate and amount of duties assessed thereon the invoice and all the papers and exhibits should be transmitted to "the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the Secretary of the Treasury for such duty at that port or at any other port, which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein, * * *."

On these provisions it was held in Prosser *v.* United States (158 Fed., 971, 972) that the board to which the papers were transmitted had exclusive jurisdiction of the case and that that jurisdiction could not be challenged or taken away by a vote of nine general appraisers and that a decision by any other board was without jurisdiction and must be vacated. If under the act of 1890 a majority of the nine general appraisers could not deprive a board of the right to dispose of a case which it had been designated to examine and decide, it is difficult to understand how under the act of 1909 the reassignment or transfer of a case by the president of the board, after trial—and not before trial, as prescribed by the statute—could end the board's jurisdiction of an issue which the law in express terms gave it full power to hear and determine.

Board 3 had jurisdiction to determine the classification of imported goods and the rate of duty which should be assessed thereon, and as

that board was the first to assume authority over the case at bar we must infer that it was proceeding regularly, inasmuch as both parties appeared and no challenge to its right to hear the issues raised by the protests was ever interposed or made. In other words, the jurisdiction of Board 3 not having been directly attacked the existence of such jurisdiction must be presumed. United States v. Park & Tilford (4 Ct. Cust. Appls., 293, 296–297) and cases cited. As Board 3 had jurisdiction both of the parties and of the subject matter of the controversy, and as its right to proceed has never been put in issue, we must conclude that it had the exclusive power at first instance to pass on every question of law and fact necessary to a proper determination of the case. United States v. Kurtz, Stuboeck & Co. (5 Ct. Cust. Appls., 142; T. D. 34192). Whether the board might lawfully proceed was one of those questions, and from that it follows that its authority over the matter could be terminated only by its own order or by the tribunal authorized by statute to review its decisions. If at the hearing the point had been made and established that the case had been properly assigned to Board 1, a decision by Board 3 that it had the right to try the case might have constituted reversible error, but having jurisdiction of the subject matter, and having assumed its exercise without objection, its authority over the case could not be ended merely by a subsequent assignment or by a vote of the whole board of nine general appraisers unless the law so provided. On the other hand, the jurisdiction of Board 1 having been directly attacked by a proper appeal, nothing can be presumed in favor of its jurisdiction, and unless the record affirmatively shows that it had the right to hear and determine the protests the exercise of jurisdiction over them can not be sustained. United States v. Park & Tilford, supra, and cases cited therein. So far as the record discloses the only warrant which Board 1 had for deciding the case was a so-called order of transfer made by the president of the Board of General Appraisers. That order must be regarded as a reassignment of the matter, and as it was made after, and not before trial, as prescribed by the statute, we must hold that it conferred no authority on Board 1 to determine the issues involved in the protests.

But even if the case had been properly assigned to Board 1, that Board was not authorized to make a decision of the issues involved without giving the parties an opportunity to be heard. If Board 1 had jurisdiction at all that fact gave it the right to *hear and determine*, but not the right to determine without a hearing or without an opportunity therefor having been afforded. Windsor v. McVeigh (93 U. S., 274, 284). The right of a judicial tribunal to take cognizance of a proceeding depends on whether is has jurisdiction of the subject matter and the parties, but its authority to adjudicate the

rights of litigants does not accrue until an opportunity has been afforded to the parties not only to appear, but to appear and be heard. United States *v.* Park & Tilford (4 Ct. Cust. Appls., 293, 298; T. D. 33514); Windsor *v.* McVeigh, *supra.* No hearing of the protests here in question was had by Board 1, and so far as appears from the record no opportunity was ever given to the Government or to the importers either to appear or to be heard. Under such circumstances a decision determinative of the protests was, in our opinion, in excess of the powers of Board 1, and on that ground, if on no other, we must hold the decision appealed from to be invalid and void. The decision of the Board of General Appraisers is *reversed,* and the matter remanded for such further proceedings as may be proper.