**GEO. S. BUSH & CO., Inc., et al.**
v.
**UNITED STATES.**
**C. D. 1175; Protest Nos. 120086–K, etc.**

United States Customs Court
First Division.
May 23, 1949.

Lawrence, Tuttle & Harper, San Francisco, Cal. (George R. Tuttle, San Francisco, Cal., of counsel), for plaintiffs.

David N. Edelstein, Asst. Atty. Gen., Joseph E. Weil, Special Attorney, New York City, for defendant.

Before OLIVER, COLE, and MOLLISON, Judges.

MOLLISON, Judge.

Plaintiffs have filed a motion for (1) a review of rulings made on September 19, 1947, by Judge Genevieve R. Cline, as to the admissibility of certain evidence more specifically referred to in the motion, and (2) that a commission be issued to take the testimony of a certain witness who had previously testified in the cases. The record shows that on September 19, 1947, at the port of Seattle, Wash., there was a voluntary submission, by counsel for both parties, of the cases for a decision by this court (R. 2547).

The protests, 120086–K, etc., were filed at the port of Seattle and on August 13, 1945, were received by the clerk of this court; the merchandise involved in the protests was dogfish-liver oil, classified by the collector under paragraph 34 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 34, as a drug, advanced in value, but claimed by plaintiffs to be entitled to free entry under paragraph 1669 of the same act. Several protests of the plaintiff named above, and others, were consolidated for disposition with the initial protest, 120086–K, and the record shows that all of said protests were dealt with, tried, and submitted together.

By reason of the subject matter and the paragraph under which the merchandise was classified, the protests were, by the terms and provisions of rule 41, 28 U.S.C. (the assignment rule for protest or classification cases) of this court, assigned to the first division of this court.

The transcript of testimony or proceedings is voluminous and of great

length. The hearings of the protests began at Seattle on February 4, 1946, before a single judge of this court, and thereafter hearings were had before the first division at New York; later at other cities on the Pacific Coast; before the first division at New York again; afterwards at Seattle and at other cities on the Pacific Coast; subsequently before the first division at New York; before a single judge at Boston; again at cities on the Pacific Coast; and finally at Seattle where the hearings were concluded before Judge Cline and the cases submitted before said Judge on September 19, 1947. Except for the several hearings at New York before the first division, all hearings in the cases were before various single judges of the court, comprising in all, five individual members of the court.

Although it would be entirely feasible to dispose of the motion before the court on grounds which involve merely the form and the substance of the motion, the defendant's attorney has in a written brief and also in oral argument challenged the jurisdiction of the first division to entertain the motion or "review" the rulings of the single judge on circuit before whom the protests were submitted, although the defendant's attorney also argues that the first division should deny the motion because the rulings of the judge on circuit were correct. Since the jurisdiction of the first division to entertain the motion and also to hear and determine and decide the cases has been challenged, necessarily this court must first dispose of the jurisdictional questions before considering the merits of the motion made by the plaintiffs.

 It requires only an examination of the present statute and its predecessors whereby this court was created and continued in existence to establish that Congress sought to secure the well-known and unquestioned benefits of three-judge-courts in the hearing and determination of classification cases, whereby the jury and judicial functions of our system of jurisprudence would be given their widest, practical application. Therefore, jurisdiction in classification cases has, by statute, been given *exclusively* to divisions of this court. 28 U.S.C. (1948 revision) § 254, under the caption "Divisions; powers and assignments" contains the following:

"The chief judge of the Customs Court shall divide the judges of such court into three divisions of three judges each, to hear and determine * * * protests against decisions of collectors * * *.

* * * * * *

"A majority of the judges of any division may hear and determine all cases and questions pending therein."

19 U.S.C.A. § 1515, provides that the collector of customs shall, in the case of protests against his decisions not sustained by him, transmit the entry, etc.,—

"* * * to the United States Customs Court for due assignment and determination, as provided by law."

The law itself makes no provision directly for assignment, but provides in 28 U.S.C. (1948 revision) § 2071 that—

"Each court established pursuant to Act of Congress may from time to time prescribe rules for the conduct of its business. Such rules shall be consistent with Acts of Congress and rules prescribed by the Supreme Court."

and in § 253 that—

"The chief judge of the Customs Court shall * * * assign or reassign, before trial and under rules of the court, any case for hearing, determination, or both * * *."

and rule 41 of the Customs Court completes the picture by providing for the assignment of classification cases to the three divisions of the court according to subject matter.

The situation which obtains under the statute and rules is well-expressed in

United States v. Park & Tilford, 4 Ct. Cust.App. 293, at page 296, T.D. 33514, as follows:

"It seems clear that the provisions of the statute above recited contemplate that classification cases, like the one now before this court, shall by the collector be transmitted to the board of nine appraisers [now United States Customs Court] to be assigned for hearing and determination to one of the boards [now divisions] of three, into which it is by statute divided, thus in effect establishing each of said boards of three as the proper tribunals to hear and determine such cases."

Since each division of the court acquires jurisdiction of classification cases by reason of the subject matter under the automatic operation of rule 41 of this court, it must follow that the jurisdiction of the division over a classification case attaches immediately upon the expiration of the statutory time within which the collector has authority to act, United States v. Straus & Sons, 5 Ct. Cust.App. 147, T.D. 34193; Tower Mfg. & Novelty Co. v. United States, 6 Ct. Cust.App. 267, T.D. 35478; Raphael Weill & Co. v. United States, 21 C.C.P.A., Customs, 152, T.D. 46479; 17 C.J., p. 652, § 258, note 21; 25 C.J.S., Customs, Duties, § 171, note 29, p. 332, subject, of course, to the power of the chief judge to assign or reassign any such case *before* trial and under the rules of the court to another *division* for hearing, determination, or both.

▪ And the immediate attachment of jurisdiction of a division over the protest case operates automatically under the statute and rule 41 regardless of whether the case arises at the port of New York, where the court by law has its headquarters, or at a so-called outport. Therefore, it makes no difference that the present case arose in, and that hearing was requested at, Seattle, Wash.; the first division acquired jurisdiction to hear and determine that case (because of its subject matter) as soon as it be-

came subject to judicial authority, and that division has never been divested of such jurisdiction. The only manner in which the jurisdiction of the first division over the case could have been terminated or transferred would have been by reassignment of the case by the chief judge before trial under the power granted in 28 U.S.C. (1948 revision) § 253, or its predecessor statute, and that was never done.

It is worthy to note at this point that it has been held that jurisdiction of classification cases resides in the *division* and not in the court as a whole. Thomas Prosser & Son v. United States, C.C., 158 F. 971, and United States v. Saunders, 5 Ct.Cust.App. 270, T.D. 34446.

The basic question here under discussion has to do with the distribution of the powers and duties of a single judge on circuit who "hears" a classification or protest case at an outport and the division of the court which has jurisdiction, under assignment rule 41, "to hear and determine" the same. The statute, 28 U.S.C. (1948 revision) § 254, provides that the chief judge—

"* * * may designate a judge or a division * * * to proceed to any port within the jurisdiction of the United States to hear and determine cases assigned for hearing at such port."

▪ It may not be fairly assumed that by the foregoing provision it was intended by Congress to confer jurisdiction upon a single circuit judge to "hear and determine" classification or protest cases because such an assumption would be obviously contrary to the three-judge-division jurisdictional concept provided for, and express provisions contained in other parts of this same section. Moreover, the notion that Congress intended, by the above provision, to confer upon the single circuit judge or the single judge sitting singly at New York City jurisdiction to "hear and determine", i. e., decide and render final judgment in protest cases, is completely and wholly negatived and contradicted not

only by the other provisions contained in said section 254 but also by sections 2631, 2633, 2635, 2636, and 2640 of chapter 169 of the Judiciary and Judicial Procedure Act, 28 U.S.C. (1948 revision), which, together with section 254, show quite plainly that Congress intended to confer jurisdiction to "hear and determine" protest cases only upon divisions of the court and to confer upon single judges jurisdiction to "hear and determine" only appeals to reappraisement. United States v. Park & Tilford, 4 Ct. Cust.App. 293, T.D. 33514; United States v. Saunders, 5 Ct.Cust.App. 270, T.D. 34446; Thomas Prosser & Son v. United States, C.C., 158 F. 971, 973; 17 C.J., p. 608, sec. 87, notes 38–40; 17 C.J., p. 653, sec. 263, note 35; 25 C.J.S., Customs Duties, § 181, note 97, p. 339; 17 C.J., p. 624, sec. 135, note 49; 25 C.J.S., Customs Duties, § 181(b) (2), note 79, p. 347; United States v. Tampa Box Co., 15 Ct.Cust.App. 360, T.D. 42561; Johnson Co. v. United States, 13 Ct. Cust.App. 373, T.D. 41318, rehearing denied 13 Ct.Cust.App. 626, T.D. 41480; and rules 8, 9, 17, 25, 40, and 41 of the Customs Court, adopted May 29, 1936, as amended.

There has never been any lack of understanding of the statutory scheme and arrangement established by the various acts of Congress relating to the structure, duties, and powers of this court and its divisions and members. The allocation or distribution of jurisdictional powers over protest cases and appeals to reappraisement as between divisions of the court and single judges thereof is well set according to long-established

construction in volume 17, Corpus Juris (published in 1919), page 608, as follows:

"[§ 87] 2. Jurisdiction. Acting singly, the general appraisers hear and determine appeals taken either by importers or by collectors from the appraisements made by the local appraisers at the various ports. Acting as boards of three, they have jurisdiction: (1) Over appeals from decisions on reappraisement made by single general appraisers, as aforesaid; (2) over protests against decisions by collectors of customs as to the rate or amount of duty on merchandise subjected to duty * * *."

The interpretation above gives force to every word and phrase in the statutory provisions relating to the Customs Court, its structure, jurisdiction, and procedure, and likewise to the system of assignment of classification or protest cases exclusively to divisions of the court by subject matter or paragraphs of the Tariff Act of 1930, and also to the division of judicial labor adopted by the court. This construction carries out the intention of Congress and makes every part of the statute effective, harmonious, sensible, workable, and practicable. Crawford, Construction of Statutes, pp. 258–261, sec. 165; [1] Sutherland, Statutory Construction, 3d ed., vol. 2, p. 336, sec. 4703,[2] p. 338, sec. 4704.

The ideas that the single judge on circuit has the statutory jurisdiction or judicial power or responsibility "to determine" protest cases, i. e., to decide the same and render final judgment therein,

[1] "Inasmuch as the language of a statute constitutes the depository or reservoir of the legislative intent, in order to ascertain or discover that intent, the statute must be considered as a whole, just as it is necessary to consider a sentence in its entirety in order to grasp its true meaning."

\* \* \* \* \* \* \*

"Hence, the court should, when it seeks the legislative intent, construe all of the constituent parts of the statute together, and seek to ascertain the legislative intention from the whole act, considering every provision thereof in the light of the general purpose and object of the act itself, and endeavoring to make every part effective, harmonious, and sensible."

[2] "* * * A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole."

or that it is legally permissible for the chief judge to assign single judges at the port of New York to preside over protest cases and decide such cases and render final judgment, or that there is nothing in the law which takes away from the single judges on circuit or at New York the jurisdiction and judicial power "to hear and determine" protest cases are all very contrary to the statute and the long-established interpretations and constructions thereof.

By virtue of the fact that Congress granted to divisions of the court exclusive jurisdiction to hear and determine protest cases such as those at bar, single judges, whether on circuit or at the port of New York, are prohibited from "hearing and determining" protest cases, i. e., deciding and rendering final judgment in same regardless of the fact that said protests may be submitted before said single judges. 28 U.S.C. (1948 revision) § 254; United States v. Park & Tilford, supra; United States v. Saunders, supra; Thomas Prosser & Son v. United States, supra; · 17 C.J., p. 608, sec. 87, notes 38–40; and the references to C.J. and C.J.S., heretofore cited.

When the protests were first received by the court in August 1945 *the jurisdiction of the first division of the court attached immediately* by virtue of section 254 of Title 28 U.S.C. (1948 revision), and rule 41 (assignment of protests to the three divisions of the court); and as a consequence the first division had jurisdiction of the *parties* to the protests and the *subject matter* of the controversies therein. The judicial authority to "hear and determine" the protests involved herein necessarily includes the power to pass on every question of law and fact necessary to a proper determination of the cases. United States v. Saunders, supra;[3] United States v. Kurtz, Stuböeck & Co., 5 Ct.Cust.App. 144, T.D. 34192. Since Congress con-

templated that single judges on circuit should merely "hear" classification or protest cases, and since said circuit judges by virtue of the long-established practice of the court do not make findings of fact or ultimate fact in protest cases which are heard or submitted before them, it therefore follows that the first division, in which jurisdiction to decide and determine the protest cases involved herein continuously resided, is the sole trier of the protests herein and as a consequence *retains the right in its discretion to ratify or reverse rulings which have been made for and on its behalf by the single judge on circuit.* And such has been the long-established practice of this court—a practice which is necessarily implied by the rules of the court. Rules 8, 9, 17, 40, and 41. Such practice of the division ratifying or reversing *the rulings which have been made for and on behalf of the division* by the single judge on circuit not only is not contrary to the statute or any of its implications, but is consonant therewith, implements the same, and effectuates the purposes and intent of the Congress.

Until the instant matter arose, the power of a division of this court, before which a case heard by a single judge on circuit was pending, to adhere to or reverse the rulings of the circuit judge was not questioned. Of course, where the circuit rulings are adhered to or affirmed, generally speaking, no mention of such action is necessarily made in the decision of the division which ultimately decides the case. However, divisions of this court in the past have considered the rulings of trial judges on circuit and in some cases have reversed the same. In Sweeney & Johnson v. United States, 61 Treas.Dec. 1331, T.D. 45772, the second division of this court reversed the ruling of a single judge on circuit allowing an amendment to a protest.

In Vuille, Inc., v. United States, 65

---

**3.** 5 Ct.Cust.App. at page 272: "* * * As Board 3 had jurisdiction both of the parties and of the subject matter of the controversy, and as its right to proceed has never been put in issue, we must conclude that it had the exclusive power at first instance to pass on every question of law and fact necessary to a proper determination of the case."

Treas.Dec. 159, T.D. 46875, the first division of this court overruled the action of a judge on circuit who denied a motion to dismiss the protest, and the division rendered a judgment of dismissal. When the matter was appealed to the Court of Customs and Patent Appeals one of the assignments of error related to the action of the Customs Court in so dismissing the protest, the contention being that because the Customs Court heard the evidence upon the merits of the case the judgment should have been either sustaining or overruling the protest. The appellate court, however, said that the Customs Court was "justified in entering a judgment of dismissal," thus giving the seal of its approval to the action of the division in reversing the ruling of the circuit judge. Vuille, Inc., v. United States, 22 C.C.P.A., Customs, 303, 307, T.D. 47349.

In Pacific Dry Goods Co. v. United States, 70 Treas.Dec. 767, T.D. 48666, the second division of this court reversed the ruling of a single circuit judge who had denied a motion of the Government to dismiss certain protests for insufficiency. A like action by the same division in the case of American Import Co. v. United States, 70 Treas.Dec. 1184, Abstract 35198, became the subject of an appeal to the Court of Customs and Patent Appeals under the style of U. Fujita & Co. v. United States. One of the assignments of error made on behalf of the plaintiffs was as follows:

"6. In not holding that the decision of the trial judge in overruling appellee's motion to dismiss was not subject to review by the division of the Customs Court which decided these protests."

In its decision reported in 26 C.C.P.A., Customs, 63, T.D. 49611, our appellate court affirmed the action of the division in dismissing the protests, thus approving the custom and practice of the division having cognizance of the subject matter exercising the power to ratify or reverse the rulings of the single judge on circuit.

In Federated Metals Corporation v. United States, 73 Treas.Dec. 574, T.D. 49493, the second division of this court reversed the action of a judge on circuit excluding certain exhibits from evidence.

In John Shillito Co. v. United States, 73 Treas.Dec. 1080, Abstract 37499, the first division of this court reversed a ruling of a judge on circuit permitting the incorporation of the record in another case, and a similar ruling was made by the second division in the case of Wilbur-Ellis Co. v. United States, 73 Treas. Dec. 1008, T.D. 49626. The latter case was reversed on other grounds in Wilbur-Ellis Co. v. United States, 26 C.C.P. A., Customs, 403, C.A.D. 47, but its action in excluding the record sought to be incorporated was held not to be error. It is noted that the assignment of error was in the following language: "In reversing the action of the trial judge in admitting in evidence the record in Martinez [& Co.] v. U. S., 24 C.C.P.A. [Customs, 285], T.D. 48703," so that the approval of the Court of Customs and Patent Appeals of the second division's action was with full knowledge of the fact that the division had reversed the trial judge's ruling.

As late as March 25, 1948, the first division reversed the action of a single judge on circuit incorporating a record in a previously tried case. Paramount Pictures, Inc. v. United States, 20 Cust. Ct. 144, C.D. 1098, which decision has been affirmed by the Court of Customs and Patent Appeals in Paramount Pictures, Inc., v. United States, 36 C.C.P.A., Customs, 44, C.A.D. 395, with knowledge by the said court that the ruling of the single judge on circuit had been reversed by the division.

It will be seen that on every occasion when the question of the power of the division having cognizance of the subject matter to overrule the ruling of a circuit judge has been before the Court of Customs and Patent Appeals, the latter court has consistently approved the action of the division when it has ex-

ercised that power. The court's action in those cases is consistent with its expression signifying its knowledge and approval of this element of Customs Court procedure which expression is found in its decision in the case of Rapken & Co., Ltd., v. United States, 25 C.C.P.A.,Customs, 268, at pages 272–273, T.D. 49393, as follows:

"In this somewhat peculiar jurisdiction it not infrequently happens that testimony is taken before a single judge on circuit who does not participate in the final determination of the case. Such judge may, not improperly in our opinion, admit testimony, even though it borders upon the doubtful, and leave it to the full division to winnow the wheat from the chaff, and so long as it does not appear the illegitimate evidence influenced the decision no harm results and no reversible error is committed."

It is argued that if the division "reviewed," i. e., ratified or reversed the rulings of the single judge on circuit, it would be "acting with appellate jurisdiction" over a judge of "concurrent jurisdiction" with no authority or provision of law therefor. Under the statute it was contemplated that the single judge on circuit at outports would merely "hear" protest cases and the jurisdiction granted the single judge on circuit never at any time included the right to decide and determine protest cases and render final judgment therein, *so that the single judge before whom these cases were submitted was not of concurrent jurisdiction* with the first division. Under the statutory scheme and arrangement for the distribution of jurisdictional powers as between the division and the single judge on circuit, the latter had the power and judicial authority to conduct the hearings and to make necessary rulings for the proper conduct of the hearings, rules 8 and 9, but said jurisdictional powers of the single judge on circuit never included the authority to hear *and* decide the cases, including the authority to pass upon every question of law and fact necessary for a proper determination of the cases, i. e., the rendition of final judgment therein. United States v. Saunders, supra; United States v. Kurtz, Stuböeck & Co., supra. The ratification or reversal by this division of any rulings of the single judge before whom the protests were submitted would be merely the exercise of judicial discretion by the real and actual trier of the case and would in legal contemplation and effect be a "review" of its own acts—*rulings which had been made for and on behalf of the division by the single judge.* This division, retaining at all times exclusive jurisdiction to "hear and determine" the protests, also retains until its final judgment the sole right to pass upon every question of law and fact necessary to a proper determination of the cases. United States v. Saunders, supra; United States v. Kurtz, Stuböeck & Co., supra.

It is said that the Customs Court practice and procedure of assigning only single judges to outports "to hear or to hear and determine" cases appearing on such dockets is inconsistent with the practice at the port of New York where divisions of the court "hear and determine" cases; and that such practice is unjustifiable and unfairly discriminates against litigants at outports. By the provisions of 28 U.S.C. (1948 revision) § 254, and its predecessor, 28 U.S.C.1946 ed. § 296, the chief judge was empowered to—

"* * * designate a judge or a division * * * to proceed to any port within the jurisdiction of the United States * * *."

By the express terms of the foregoing statutory provisions, the former presiding and now chief judge was given a power of discretion to designate either a single judge or a division of three judges to proceed to any port. The then presiding judge having exercised the discretion to send a single judge to the port of Seattle, such discretion may not be reviewed or challenged in this or in any other court, there being no showing that

the designation of the single judge was not in conformity with law. Martin v. Mott, 12 Wheat. 19, 25 U.S. 1932, 6 L.Ed. 537.

The single-judge designation for the Seattle docket and calendar, including the protest cases at bar, was consistent with the procedure adopted for all other outports; and said procedure for all outports was uniform, equable, and operated alike upon all litigants at said outports in a just, fair, and nondiscriminatory manner. The custom of not sending divisions of three judges to outports except in exceptional and extraordinary circumstances is a legally justifiable and permissible method of division of judicial labor and mode of conducting the court's business, and has been expressly authorized by Congress, 28 U.S.C. (1948 revision) § 254, so that no discrimination results against litigants at outports nor against the litigants herein. The procedure of single-judge designation at outports is neither arbitrary nor discriminatory, but is fair, reasonable, and well-adapted to the purposes sought to be obtained. The due process clause of the fifth amendment does not exact uniformity of procedure in all cases. Congress is empowered to classify litigation and authorize, or permit under a grant of discretionary power, a single-judge designation or a designation of a division of three judges in the discretion of the chief judge. Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904.

Moreover, the practice of single-judge designation has been adopted and retained for years because it resulted in large saving of public money, worked well, was satisfactory to the litigants, and caused a minimum of inconvenience at the port of New York where the greater number of customs cases arise. In the cases at bar the litigants did not request the designation of a division of three judges.

It is contended that the Customs Court procedure and practice of the division assuming jurisdiction of protest cases under rule 41 of this court and deciding and determining such cases wherein evidence has been heard by a single judge or judges on circuit is not supported by law either directly or by implication. The practice of the Customs Court is based upon the applicable provisions of the Judiciary and Judicial Procedure Act of 1948, and the various predecessor acts, 28 U.S.C.1946 ed. § 296; 19 U.S.C.1940 ed. § 1518, and the applicable provisions of the Tariff Act of 1930, the purpose of which statutes was to give the benefit of three-judge-jurisdiction and decision in classification or protest cases.[4] single-judge decision in valuation or appeals for reappraisement,[5] hearings and trials for importers at their home ports within the territorial jurisdiction of the United States, *and also uniformity of judicial decisions* on the same issues and subject matters arising from the impositions of duties under the customs laws.[6]

The retention (unless reassigned by the chief judge *before* trial) by the division of the jurisdiction to decide and determine the cases and render judgment once the jurisdiction of the division has

4. United States v. Park & Tilford, 4 Ct. Cust.App. 293, T.D. 33514; United States v. Saunders, 5 Ct.Cust.App. 270, T.D. 34446; Thomas Prosser & Son v. United States, C.C., 158 F. 971.

5. 28 U.S.C. (1948 revision) § 2631 et seq.; 17 C.J., p. 608, sec. 87, notes 38–40; 17 C.J., p. 624, sec. 135, note 49; 17 C.J., p. 653, sec. 263, note 35; 25 C.J.S., Customs Duties, § 181, note 97, p. 339.

6. R. E. Smith, Customs Valuation in the United States (1948), pp. 134–5:
"The Payne Act thus completed the reforms in customs jurisprudence begun by the Administrative Act of 1890. Although the Board of General Appraisers had operated efficiently under the earlier act, it only partially relieved the circuit (district) courts of the tremendous volume of litigation, since the number of applications for review by such courts was constantly increasing. The decisions of the circuit courts in many cases could be appealed all the way up to the Supreme Court. The congestion of court calendars was so great that the average life of a customs appeal after leaving the

attached under assignment rule 41 upon the expiration of the statutory period within which the collector might act, is a condition imposed by the plain mandate of the statute applicable to protest cases. 28 U.S.C. (1948 revision) § 254; Thomas Prosser & Son v. United States, supra; United States v. Park & Tilford, supra; United States v. Saunders, supra. It is wholly by virtue of the provisions of the statute that the single judge on circuit has nothing to do with the determination and decision of protest cases, even though the single judge has heard the witnesses and observed the demeanor thereof, and formed certain impressions. Section 254 and sections 2631, 2633, 2635, 2636, and 2640. In order to carry out the statutory plan and intent to secure more important advantages and benefits for the importers and general public, such as three-judge-decision in protest cases in lieu of the abolished jury trial, the relatively less important benefits and advantages of divisions seeing and observing the witnesses and the demeanor thereof had to be dispensed with in order to realize and secure larger and vastly more important and vital statutory objectives.

But it is contended that the practice of retention of jurisdiction of protest cases by the division and the decision and determination thereof by the division which has not heard and seen the witnesses and observed their demeanor deprives the litigant of due process of law for the reason that the litigant has a right to have the judge who hears the testimony of the witnesses and before whom said case is submitted conclude, decide, and determine the case and render judgment; that there must be procedure requiring the "trial judge" to decide and conclude the litigation over which he has presided.

■ The process of law afforded all litigants at all outports by the practice and procedure of this court provided such litigants notice, opportunity to be heard before a judge of this court, the right to produce evidence, the right to examine and cross-examine witnesses, the right to make oral and written arguments before the judge or the division of this court which will decide and determine the case; such process of law is due process of law and is fair and non-discriminatory, and is entirely consistent with the procedural requirements and substantive rights to due process guaranteed by the fifth amendment. See Willoughby, Constitutional Law of the United States, second edition, p. 1709, sec. 1122; Hagar v. Reclamation Dist., 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569.

Board of General Appraisers was four and one-half years. The act of May 27, 1908, requiring the review of all cases on the basis of the original record of the board, reduced this to two and one-half years.41 But, apart from the element of delay, a fundamental defect in the procedure lay in the fact that each of at least one hundred and twenty judges throughout the federal judiciary was a possible final arbiter of customs appeals. The impossibility of any uniformity in the interpretation of customs laws under these conditions is obvious. The raising of the Board of General Appraisers to the circuit-court level eliminated, in one step, more than half the number of judicial arbiters in customs cases. The creation of the Court of Customs Appeals removed all others but the Supreme Court and completed the task of concentration and specialization. The fruits of this legislation have been threefold: the speedier disposition of customs litigation; greater uniformity of decision; and the higher quality of decision made possible by the high degree of specialization on the part of the customs judiciary."

(See also W. H. Futrell, The History of American Customs Jurisprudence (1941), pp. 86–90, 177–179; Wolff v. United States, 1 Ct.Cust.App. 181, T.D. 31217.)

41. U. S. Treasury, Annual Report, 1908, pp. 58–59. The procedure in reviewing the board's decisions under the 1890 act had permitted the referral to the board by the court for the taking of such additional testimony as either litigant chose to furnish. This amounted in most cases to a trial *de novo* by the circuit court after the return of the additional evidence, since neither litigant was disposed to present his entire case initially before the board.

*The division which decides the protest case makes the findings of fact and ultimate fact on which the judgment is based.* The litigant is not exposed to any arbitrary exercise of the power of government and the form or mode of hearing is entirely judicial in character.

The litigant has the benefit of a full, fair, and ample hearing after notice given and in conformity with a general law, and the fact that the hearing at an outport is conducted before a judge of this court does not afford the litigant any basis for claiming that the due process clause of the fifth amendent has been violated, the litigant having all the advantages of being heard at or near his home port before a judge of the United States. .

The law in respect to this matter is well-stated in 12 Am.Jur., p. 303, as follows:

"The procedure or hearing requisite to due process must be *appropriate and such as is practicable and reasonable in the particular case.* [Italics supplied.] * * * No fixed procedure is demanded. The requirement of due process is met if the trial is had according to the settled course of judicial proceedings by a court of justice having jurisdiction. Any legal proceeding enforced by public authority, whether sanctioned by age and custom or newly devised' in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves the principles of liberty and justice, is regarded as due process of law. The cases proceed upon the theory that given a court of justice which has jurisdiction and acts not arbitrarily but in conformity with a general law, upon evidence, and after inquiry made with notice to the parties affected and opportunity to be heard, then all the requirements of due process, so far as it relates to procedure in court and methods of trial and character and effect of evidence, are complied with."

The fifth amendment does not exact uniformity of procedure, and a procedure, as here, which affects alike all similarly situated at outports does not violate the due process clause. 16 C.J. S., Constitutional Law, § 562, notes 45 and 46, p. 1126; Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904. And Congress had the right to classify litigation and to devise a system whereby one type of procedure might be provided in respect to all classes of cases tried at the port of New York and a different type of procedure for cases tried at outports. Dohany v. Rogers, supra.

■ Due process of law does not require that the judge or division of three judges which renders the judgment actually see and hear the witnesses testify and observe their demeanor.[7]

The case of United States v. Nugent, 6 Cir., 100 F.2d 215, has been referred to as authority for the proposition that, so far as the Customs Court procedure is concerned, the single judge on circuit who "hears" the evidence in a protest case must conclude, determine, and decide the same. However, an examination of the case will disclose that it is clearly distinguishable from the matter and situation at bar and that such decision is wholly inapplicable here and by the very nature of the subject matter the holding therein cannot be applied to Customs Court practice and procedure.

That case involved an action brought under the Tucker Act, 28 U.S.C. § 41 (20), in a District Court of the United States for an alleged appropriation of private property in consequence of the erosion and washing away of the plaintiff's land. The evidence was heard by

---

7. 16 C.J.S., Constitutional Law, § 624, note 40, p. 1271. "Due process of law does not forbid hearing of a cause on a transcript of evidence formerly heard in court, * * *." and citing De la Rama v. De la Rama, 241 U.S. 154, 36 S.Ct. 518, 60 L.Ed. 932.

a judge of the District Court who resigned from office without having made the specific findings of facts and conclusions required by the Tucker Act; another district judge under a general designation made the findings of fact and conclusions of law based upon the stenographer's report of the testimony, and entered judgment. The later judge did not, however, file a written opinion as required by the said act, 28 U.S.C. § 764.

The Circuit Court of Appeals (Sixth Circuit) decision held that the Tucker Act impliedly requires that the same judge who hears the case shall make the findings and conclusions and that this requirement was mandatory; whereas the statute governing Customs Court procedure is very different in provision and intent, has no such requirement, and expressly permits single judges to "hear" protest cases at outports but nevertheless requires decision and determination of protests by divisions of the court. Moreover, the decision in the Nugent case rested as much or more upon the holding of the court that no written opinion was filed in the case by the judge who decided the case, and that the filing of a written opinion was mandatory under the terms of the Tucker Act since such written opinion was held to be necessary for the personal use of the Attorney General in his determination whether an appeal should be taken from an adverse judgment. A mere reading of the opinion will reveal that the holding was intended to apply to proceedings or suits under the Tucker Act only, and was not intended to have general application.

Because the territorial jurisdiction of the United States Customs Court is so vast, comprising the entire continental United States, Puerto Rico, Alaska, and Hawaii, it is wholly impractical to send from New York to every port of the United States at which hearings might be had each division of the court having jurisdiction of cases set for hearing at such ports. To do this would require the attendance and presence of all the nine judges at each docket outside of New York City and would also hamper and impede the work of the court at New York City, where approximately 70 percent of the Customs Court cases arise.

The most obvious method of avoiding such overwhelming difficulties has been to adopt the procedure which Congress contemplated and which the act permits and send one judge of the court who is empowered to hear the cases as and for each division of the court. It is true that this procedure results in a decision ofttimes by divisions of three judges none of whom have personally seen the witnesses or heard their testimony, but due process of law does not require that the judge or division of judges which makes the findings of fact and renders judgment actually see and hear the witnesses in a case; and, besides, the disadvantages occasioned by such method of procedure are more imaginary than real and are far outweighed by prompt dispatch of the court's business, freedom from unwieldiness of operation, economy of time, effort, and public money saved thereby. That such method of procedure is legally as well as practically justified is demonstrated by the more than 58 years it has been in satisfactory use and its universal acceptance by the bench, bar, legislature, and litigants involved. All that due process requires is that the proceeding or hearing be appropriate, practicable, and reasonable in the particular case. Hagar v. Reclamation Dist., 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569; 12 Am.Jur. p. 303, sec. 608. The Customs Court procedure is appropriate, practicable, and reasonable. And where a course of procedure has been so long followed by the court, such fact alone argues legislative authority therefor. Tower Manufacturing & Novelty Co. v. United States, 6 Ct.Cust.App. 267, 270, T.D. 35478.

The suggested procedure whereby single judges on circuit and elsewhere would decide and determine all cases heard and submitted before them would not only violate the statute in respect to protest cases, but would also nullify the

congressional objectives and purposes, destroy the uniformity of judicial decision on the same issues and subject matter in respect to the imposition of customs duties, create insuperable difficulties in respect to the conflict of jurisdiction between and among the nine judges and the three regular divisions of the court, and bring chaos in regard to the assignment of cases.

It must be remembered that—

"One of the most important reasons for the creation of a Board of General Appraisers [8] [predecessor to the United States Customs Court] *was to secure through that body* uniformity of appraisement and classification." [Italics supplied.]— Wolff v. United States, 1 Ct.Cust. App. 181, 188, T.D. 31217.

The intention and purposes of Congress in creating the Court of Customs Appeals (predecessor to our appellate court) and the Board of General Appraisers (predecessor to this court) have been well set forth in Willoughby, Constitutional Law of the United States, second edition (1929), pp. 1259–60, as follows:

"§ 791. United States Customs Court: Formerly United States Board of General Appraisers.

"By acts of June 10, 1890 [26 Stat. at L. 131], May 28, 1908 [35 Stat. at L. 406], and August 5, 1909 [36 Stat. at L. 105], original jurisdiction over cases and controversies arising out of the collection of the national customs revenue was transferred from the Federal District and then existing Circuit Courts to the Board of General Appraisers, with appeal to the United States Court of Customs Appeals, and, in certain cases, with ultimate appeal to the Supreme Court. The Board was given authority to determine ques-

tions arising in such cases under the Constitution and laws of the United States and under treaties between the United States and foreign countries.

"§ 790. Court of Customs Appeals.

"This tribunal was established by the act of August 5, 1909 [36 Stat. L. 105], in order to relieve the then existing Circuit Courts from the trial of cases relating to the classification of goods and the customs duties leviable upon them, *as well as to obtain a uniformity of holdings as to these matters.*" [Italics supplied.]

Under the advocated procedure of the single-judge decision and determination of protest cases heard and submitted before the said judge on circuit or elsewhere, it is clear that there might be several or even conceivably nine different judicial decisions on the same issue and same subject matter involving the imposition of customs duties, further complicated by the fact that in respect to each protest case where the single circuit judge had rendered decision one of the three regular divisions into which the court is divided would also have undoubted statutory right to render judgment in each of such cases, and as a result the uniformity of judicial decision on customs matters sought by Congress would be completely destroyed and the effect of these conflicting decisions upon the business and commercial world would be disturbing and disastrous. And it seems reasonably probable that under such conditions a tremendous number of cases would have to be appealed to our appellate court.

In addition to all these adverse and disturbing results of the lack of uniformity, aggravating and confusing conflicts of jurisdiction would arise (1) between and among the nine single judges who might at one time or another hear a

---

**8.** The Board of General Appraisers was a judicial tribunal clothed with judicial powers. Marine v. Lyon, C.C., 65 F. 992, 994; Stone v. Whitridge, White & Co., C. C., 129 F. 33, 36; United States v. Macy & Co., Inc., 13 Ct.Cust.App. 245, T.D. 41199; United States v. McConnaughey, 13 Ct.Cust.App. 112, T.D. 40944; United States v. Kurtz, Stuböeck & Co., 5 Ct. Cust.App. 144, T.D. 34192.

part or portion of the testimony of a case or do some judicial act or make some order in connection therewith; or (2) between and among all, some, or any one of the nine judges and one of the three regular divisions of the court.

It seems manifest that the circuit judge does not act as an individual judge, independent of any division in respect to the hearing of protest cases at outports. As has been pointed out only divisions of the court have power to hear *and* determine classification cases. Any action as an individual judge would presuppose acquisition of jurisdiction from the division, which could only be acquired by reassignment of the case by the chief judge. In this case the then presiding judge *did not assign to Judge Cline the classification cases on the Seattle calendar;* he authorized her to proceed to that port "for the purpose of hearing or of hearing and determining" the cases assigned for hearing at that port. He was obviously following the words and intendment of the statute in effect at the time Judge Cline received her designation. The actions of both the presiding judge and Judge Cline in this case were inconsistent with a divesting of the jurisdiction of the division over the cases and transferring the same to Judge Cline. Furthermore, the presiding judge could not have assigned the cases to Judge Cline under the then-existing statute, 28 U.S.C.1940 ed. § 296, because the hearings or trial had already commenced and he was powerless to reassign the cases.

It has been suggested that unless the single judge on circuit has the power to decide and determine the protest case he becomes a mere commissioner "with no powers of a court." It is obvious that this contention is without merit, because the single judge on circuit does not receive any appointment or commission from the division having jurisdiction of the case. The single judge on circuit is empowered by the act of Congress itself to hear all protest cases at outports, and such single judge is designated to hold such hearings by the presiding or chief judge under a grant of discretionary power included in the statute. Besides, the judge on circuit is a member of the court and is of equal judicial rank with the judges of the division having jurisdiction of the cases. Moreover, the hearing of cases by the single judge is by virtue of a general power granted by the Congress, and is in no manner limited to particular issues or particular cases, as would be the situation of a commissioner.

As has been said before, the single judge on circuit does not have concurrent power with the division in respect to the decision and determination of protest cases heard on circuit because such an assumption would imply a jurisdiction equal with that of the division, which assumption is negatived by the fact that the statute confers *exclusive* jurisdiction upon the division. United States v. Saunders, supra, 17 C.J., p. 608, sec. 87, notes 38–40; 28 U.S.C. (1948 revision) § 254.

If we consider that the single judge, when hearing a protest case on circuit, *acts as and for the division* having cognizance of the subject matter, and, in fact, *is* the division on circuit, the long-established and customary distribution of jurisdictional powers as between the single judge on circuit and the division becomes rational, reasonable, appropriate, and practicable, and the statute becomes workable. In this view of the matter the protest case is determined by the division to which it was assigned (automatically by rule 41 of the court) and which was the real "trier" of the case. This construction of the statute makes proper the sending on circuit of a judge with his attendant judicial power and dignity, and makes a logical division of the labor of the court, and likewise makes possible uniformity of judicial decision on the same issues and same subject matter. Such a construction also makes unnecessary any reassignment of cases; jurisdiction of the division over classification cases *beginning* and

*remaining* in the division having cognizance of the subject matter.

■ It follows from what has been said that the actions and rulings of circuit judges in classification cases are, in effect or legal contemplation, the actions and rulings of the division having jurisdiction. That a division or a court may, in its sound discretion and in the interests of justice, reverse its own action or ruling before judgment does not seem to be open to question; and in ratifying or reversing the actions of a single judge on circuit the division would not be acting with appellate power or jurisdiction.

Of course, such power should be reasonably exercised under just conditions so as not to injure the opposite party and so as not to deprive either party of the opportunity to introduce material evidence in view of the changed state of the record. Following · the long-established practice and custom whereby divisions of the court have ratified or reversed the actions and rulings of the single judge on circuit, which practice and custom our appellate court has had knowledge of, has acquiesced in, and tacitly approved, and because of the express provisions of the statute and the necessary implications thereof, we conclude that the first division has jurisdiction to entertain the motion and pass thereon.

■ After a careful examination and consideration of the plaintiffs' motion, the supporting papers, the defendant's memorandum in opposition, the transcript of the argument on the motion, and the record in the case at bar, we believe that the motion should be denied for reasons which go both to the form and substance thereof. As to the form of the motion, the record in this case shows that on September 19, 1947, at the port of Seattle there was a *voluntary submission* (R. 2547) by counsel for both parties of the case for decision by this court. The motion before us is essentially one to permit the taking of further proof. We know of no manner in which that may be done after submission in this or in any other court without an order of the court setting aside the submission or reopening the case. United States v. 3,376.1 Acres of Land, D.C., 27 F.Supp. 1023. The motion at bar does not contain any application for an order setting aside the submission and reopening the case, and consequently the motion as made would merely add confusion to an already seemingly overextended record.

■ Secondly, a reading of the body of the motion shows it to be drawn in an indefinite manner. The first paragraph moves "for a review of rulings" made by the trial judge on September 19, 1947; the second paragraph identifies the rulings by page number and general scope; and the third paragraph refers to the plaintiffs' "reason for seeking a commission," *without moving the issuance of such commission.* This oblique reference to the purpose of the motion hardly seems to amount to the statement of a motion or the apprisal of the opposite party and the court of the relief sought thereby.

■ As to the substance of the motion, we are of the opinion that the motion for a review of the trial judge's rulings should be denied for the reason that the rulings in question were correct. A reading of the questions, the objections to which gave rise to the rulings sought to be reviewed, as well as the offers of proof made by counsel for the plaintiffs, establishes that the answers called for would have been beyond the qualifications of the witness to give, would have required the assumption of facts not in evidence, and would have resulted in the usurpation and invasion by the witness of the judicial functions of the court.

The motion is therefore denied.

COLE, Judge (concurring).

I am persuaded in fairness to the majority and myself, as the writer of this memorandum, that I should set forth immediately at this point the exact lan-

guage of my initial views which have run the gamut and been returned with the majority's views attached thereto, and refer later to some of the observations in the memorandum of the majority. This is what I had to say:

This decision deals with a motion filed by plaintiffs in these proceedings for a review of the rulings by Judge Cline on the admission of evidence, and for issuance of a commission to take testimony. Specifically, the motion seeks "(1) That the rulings by Judge Cline be reversed, and (2) that a commission addressed to the American Consul at Vancouver, British Columbia, be issued to take the testimony of the witness, A. L. Tester, and (3) that plaintiffs have until April —, 1948, for the filing of direct interrogatories, and defendant have 14 days thereafter for the filing of cross-interrogatories."

Defendant opposes the motion, and in doing so not only contends that the rulings by Judge Cline were correct, but also presents as its main objection (specifically presented before this court for the first time as far as I have been able to discover) that the motion should be denied because this division would be acting with appellate jurisdiction, thereby challenging the right of the division to entertain the motion at all.

The case, which has been tried at considerable length, has a very voluminous record. Although several protests have been consolidated for disposition herein, I shall, for the purposes of this discussion, refer only to the initial protest, 120086–K, which is typical.

Because of the effect and consequences of my findings upon a heretofore long and uninterrupted procedure in similar cases, the record will be referred to and discussed at some length.

The issue concerns dogfish-liver oil, classified by the collector under paragraph 34 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 34, as a drug, advanced in condition, with an assessment of duty at 10 per centum ad valorem, and claimed by plaintiffs to be entitled to free entry as a crude drug under paragraph 1669 of the Tariff Act of 1930, 19 U.S.C.A. § 1201, par. 1669. There was also an assessment of an internal revenue tax at the rate of 1½ cents per pound, but there is no dispute with respect to such imposition.

The subject of the litigation is one assigned to the first division of this court, under rule 41. If this case had been one directed against a decision of the collector of customs at the port of New York, it would have been assigned, immediately upon receipt by the court, to a first divison calendar and called regularly thereafter.

Seattle, Wash., however, was the port of entry, and the protest was filed in June 1945, with the collector of customs at that port. In due time, papers pertinent to the cause of action were forwarded by the collector at Seattle, and upon receipt by the court in August 1945, were filed, under instructions by the clerk of this court, with the protest division where they were deposited in a compartment or receptacle labeled "Seattle, Washington," just as any other protests received from ports other than New York would be assigned to respective files, in accordance with longstanding practice.

The statutory structure of this court is interesting to recall at this point. Section 518 of the Tariff Act of 1930, 28 U.S.C.1946 ed. § 296, directs that the offices of the United States Customs Court shall be at the port of New York and supplies the authority for the existence of the court and its power "to establish from time to time such rules of evidence, practice, and procedure, not inconsistent with law as may be deemed necessary for the conduct of its proceedings." Said section provides further that "One of the judges of such court, designated for that purpose by the President of the United States, shall act as presiding judge, and in his absence the judge then present who is senior as to the date of his commission shall act as presiding judge; * * *.

The presiding judge, or the acting presiding judge in his absence, shall have control of the fiscal affairs and of the clerical force of the court, making all recommendations for appointment, promotions, or otherwise affecting such clerical force; *he may at any time before trial, under the rules of the court, assign or reassign any case for hearing or determination, or both, and shall designate a judge or division of three judges and such clerical assistants as may be necessary to proceed to any port within the jurisdiction of the United States for the purpose of hearing or of hearing and determining cases assigned for hearing at such port, and shall cause to be prepared and promulgated dockets therefor. * * * The judges of said court shall be divided into three divisions of three judges each for the purpose of hearing and deciding appeals for the review of reappraisements of merchandise, and of hearing and deciding protests against decisions of collectors.* A division of three judges or a single judge shall have power to order an analysis of imported merchandise and reports thereon by laboratories or bureaus of the United States. The presiding judge shall assign three judges to each of said divisions and shall designate one of such three judges to preside. The presiding judge of the court shall be competent to sit as a judge of any division or to assign one or two other judges to any of such divisions in the absence or disability of any one or two judges of such division. A majority of the judges of any division shall have full power to hear and decide all cases and questions arising therein or assigned thereto. A division of the court deciding a case or a single judge deciding an appeal for a reappraisement may, upon the motion of either party made within thirty days next after such decision, grant a rehearing or retrial of such case when in the opinion of such division or single judge the ends of justice so require." [Italics mine.]

Although the 1948 revision of Title 28 of the United States Code was not in effect at the time this case was tried and submitted, it will be found by reference thereto that section 518, supra, has been broken down into different chapters and sections thereof. For instance, the rule-making power of this court is the same as that enjoyed by all United States courts, 28 U.S.C.1948 ed. chapter 131, § 2071. The authority for the presiding (now chief) judge to divide the court into three divisions of three judges each is found in 28 U.S.C.1948 ed. chapter 11, § 254, titled, "Divisions; powers and assignments", with a paragraph, specifically referring to assignments to circuits, reading as follows: "The chief judge may designate a judge or a division and necessary clerical assistants to proceed to any port within the jurisdiction of the United States to hear and determine cases assigned for hearing at such port." It should be noted that this language does not include the phrase "to hear," found in section 518, supra. The power of the chief judge to divide the judges of this court into three divisions of three judges each is also embodied in § 254, supra. The authority of a single judge or a division to order an analysis of imported merchandise is now found in 28 U.S.C.1948 ed. chapter 169, 2639.

It will be observed from the foregoing that the statute permits the judge or division of three judges, whenever designated by the presiding (now chief) judge, to proceed to any port within the jurisdiction of the United States to hear or hear and determine cases *"assigned for hearing at such port"* (italics mine), and later, in referring to the three divisions of three judges each, into which the court is divided for certain purposes, it is specifically stated that "A majority of the judges of any division shall have full power to hear and decide all cases and questions * * * assigned thereto."

The instant case was definitely assigned to the docket at one of the ports specifically listed in the authorization issued by the presiding (now chief) judge, designating a single judge to proceed thereto for the purpose of presiding over

the trials and, as part of such designation, to hear or hear and determine all cases before the court at such ports.

It is important to bear in mind from the foregoing that the act of Congress creating this court delegates, in one section, the power to the presiding (now chief) judge to designate individual judges or a division of three judges *to hear or hear and determine* cases assigned for hearing at any port within the jurisdiction of the United States, and later—not preceding said authority, but following it—in the same section, is the direction that the court be divided into three divisions for the purpose of hearing and deciding litigation before the court, including protest cases.

Undoubtedly Congress intended by the language hereinabove quoted that this court of nine judges shall be divided into three divisions of three judges each for the expeditious handling of litigation before it, and that such divisions would be seated permanently at the principal office of the court, which is named in the statute as New York. At the same time, Congress provided authority to send, upon order of the presiding judge, to any port within the jurisdiction of the United States where conditions would justify such a move, a division of the court, or in lieu thereof a single judge delegated for that purpose. Indeed, the practice of a division being sent on circuit by the presiding (now chief) judge to actually hear cases at ports other than New York has been most rare; in fact, during approximately 6 years the writer of this opinion has been a member of the court, not a single case has been heard at any port within the jurisdiction of the United States, other than New York, except by a single judge, as distinguished from a division of three.

As I view it, it is rather unfortunate that the practice prevailing when the Board of General Appraisers permitting the individual members of the board to preside over the trials of cases and later have the record, taken before the individual member on circuit, referred to one of the boards of three, has continued as a practice of this court. Such practice might be condoned when individuals, in the category of commissioners or notaries public, travel throughout the country to accommodate litigants and witnesses and corral great volumes of testimony for use in subsequent recommendations to an appropriate body concerned with some particular inquiry. But to impose such procedure—as has been the case since the transformation of the Board of General Appraisers to the United States Customs Court, a court of record—permits a trial judge of the United States judiciary to preside over the trial of a case or cases, in which, as in the instant matter, many witnesses are heard and observed, and upon the conclusion and final submission thereof for said trial judge or judges to have nothing whatever to do with the determination of such cases, because it is . claimed that a division of the court, that has never seen a single witness or heard any of the testimony, except possibly through a casual opportunity presented to meet the convenience of witnesses and attorneys who happened to be in the city of New York, has, under procedure presently in effect, sole jurisdiction to determine the same. There is not the slightest opportunity, from such procedure, for the division disposing of the case, as has been the practice in the past, to comment upon the demeanor or the impression formed by the trial judge of such witnesses, a consideration most important for a trial court, composed of a single or several judges, such as the division in these matters, to have before it.

The case in question remained in the files of this court between August 1945, .when the papers were formally received in New York and entered into official records, and February 1946, when it was first called on a Seattle docket. In other words, when the court received the case in August 1945, it was then arbitrarily recognized as litigation assignable to a Seattle docket, not then in existence, but to be prepared and promulgated later, when the presiding judge

would so decide in a "Schedule of Hearings at Ports Other than New York," made up late in the year 1945, for the ensuing calendar year.

Following is a table showing the dates of the several hearings had in this case, the ports at which they were held, and the judge or division before whom the trials were conducted:

| DATE | PORT | COURT |
|---|---|---|
| Feb. 4, 1946 | Seattle | Judge Keefe |
| Feb. 19, 1946 | San Francisco | Judge Keefe |
| Apr. 11, 1946 | New York | First Division |
| Apr. 12, 1946 | New York | First Division |
| Apr. 19, 1946 | New York | First Division |
| July 9, 1946 | Los Angeles | Judge Ekwall |
| July 18, 1946 | San Francisco | Judge Ekwall |
| July 29, 1946 | Seattle | Judge Ekwall |
| July 31, 1946 | Seattle | Judge Ekwall |
| Aug. 1, 1946 | Seattle | Judge Ekwall |
| Oct. 9, 1946 | New York | First Division |
| Oct. 10, 1946 | New York | First Division |
| Oct. 11, 1946 | New York | First Division |
| Feb. 18, 1947 | Seattle | Judge Mollison |
| Feb. 19, 1947 | Seattle | Judge Mollison |
| Feb. 20, 1947 | Seattle | Judge Mollison |
| Feb. 21, 1947 | Seattle | Judge Mollison |
| Feb. 24, 1947 | Portland, Oreg. | Judge Mollison |
| Feb. 25, 1947 | Portland, Oreg. | Judge Mollison |
| Mar. 12, 1947 | Los Angeles | Judge Mollison |
| June 4, 1947 | New York | First Division |
| June 5, 1947 | New York | First Division |
| June 9, 1947 | New York | First Division |
| June 12, 1947 | New York | First Division |
| July 18, 1947 | Boston | Judge Lawrence |
| Aug. 22, 1947 | Los Angeles | Judge Cline |
| Sept. 2, 1947 | San Francisco | Judge Cline |
| Sept. 3, 1947 | San Francisco | Judge Cline |
| Sept. 16, 1947 | Seattle | Judge Cline |
| Sept. 17, 1947 | Seattle | Judge Cline |
| Sept. 18, 1947 | Seattle | Judge Cline |
| Sept. 19, 1947 | Seattle | Judge Cline |

Six individual judges have presided at different times in the several trials of this case. A very small part of the record was taken before a division of three judges, when some of the witnesses were heard in New York, by virtue of an order issued by an individual judge on circuit, directing that the case be returned to New York for that purpose. Four of the individual judges before whom a very considerable part of this record was made are not members of the division to whom the present motion is addressed; in fact, one of said judges is no longer a member of the court.

At all of the above-enumerated trials where a single judge presided, such appearance at the particular port designated was pursuant to an authorization from the presiding (now chief) judge of this court, issued under statutory authority, section 518, supra, "for the purpose of hearing or of hearing and determining cases assigned for hearing at such port." In the two instances, showing hearing before the first division at New York, the case had been transferred here for further testimony.

When the case was finally submitted before Judge Cline at Seattle, on September 19, 1947, counsel for both parties, following another long-standing practice in this court, requested an opportunity to file briefs after transcription of the record had been filed. Accordingly, plaintiffs were given 90 days after transcription of the record in which to file a brief, and defendant was allowed 90 days thereafter to reply. The record consists of 2,548 pages of testimony and 59 documentary exhibits. It is replete with rulings by the several judges hereinabove named, either admitting or excluding evidence, with exceptions taken by both parties.

The immediate question before us pertains to rulings by Judge Cline at the final hearing of the case in Seattle, sustaining objections made by Government counsel to questions propounded on direct examination to plaintiffs' witness, A. L. Tester, conceded to be a duly qualified statistician. The court's rulings, as well as plaintiffs' counsel's offers of proof, are not only set forth in the record, but are also embodied in the motion under consideration.

I shall dispose of the first two requests in plaintiffs' motion, supra, in order. The third answers itself, depending upon my disposition of the number 2 request. The first question raised is jurisdictional, i. e., whether this division can pass upon the rulings of an individual judge, prior to the decision of the entire case on its merits, assuming such a decision is to be made by the division in conformity with heretofore existing practice, of which this opinion will herein-

after discuss and criticize, if not, by indirection, dispose.

This court is part of the United States judiciary. It is a court of record and the position of each judge, and his decisions in the trials of cases properly heard by him are reviewable only to the extent and in the manner prescribed, insofar as this court is concerned, in the law creating it, and other pertinent laws applicable thereto. If this division has any right to review the rulings of any of the individual judges, who presided on circuit over the trial of this long and highly important case, then such right must be found in the law controlling the court's existence. I find no such authority in the law, either specifically or by inference.

There is no dispute in this case, and I doubt if any could be presented, as to the action of the presiding judge in preparing and promulgating the numerous dockets upon which this litigation appeared from time to time. Nor has any question been raised as to the authority of the presiding judge to designate, as was done, the several individual judges to conduct the various phases of the issues presented at different ports outside New York. The jurisdiction of the first division to hold the hearings in New York is not disputed. Likewise, if the presiding judge should designate an individual judge to preside over a protest case at the port of New York such an assignment would be entirely legal just as much so as at any other port. Such practice, however, has never been invoked for the reason, I presume, that the divisions are conveniently available in New York. The fact that the divisions are not also available where other trials of protest cases are held is no justification for the procedure outlined.

The course followed in initiating litigation before the United States Customs Court and the Board of General Appraisers (predecessor to this court) is well known. The procedure employed in filing, docketing, hearing, and final submission of the protest under consideration, as hereinabove outlined, applies to all classification cases arising at ports outside New York. If such litigation is initiated in New York, however, and is tried and submitted for decision in New York, where the principal office of the court is, by law, directed to be, then the entire proceedings are held before a three-judge division, and at no time is a single judge permitted to conduct any part of such litigation, without specific agreement between the parties that all of the judges of the appropriate division shall participate in the decision of the case.

The somewhat inconsistent procedure, disposing of classification litigation, may be further emphasized this way. The statute, section 518, supra, is strictly construed in all litigation concerning protests against decisions of the collector of customs at New York, when such cases are entirely heard and submitted at this port. Every such protest is assigned according to subject matter, rule 41 of this court, to a division of three judges who hear and decide the case. On the other hand, protest cases arising at ports outside New York are placed on calendars at such ports designated by the presiding judge who assigns a judge thereto to "call the calendars on the dates set for such hearings and shall dispose of the same in such manner as in his judgment he deems proper." Rule 8 of this court.* It is not unusual for several individual judges, as developed in this case, to take testimony at various cities throughout the United States and never participate in the decision because, as a matter of long-standing practice, it is claimed they have no jurisdiction over subject matter, not through limitation imposed under the organic law but by arbitrary assignment under rule of court.

This unique procedure was referred to in Rapken & Co., Ltd., v. United States, 25 C.C.P.A.,Customs, 268, T.D. 49393, as follows:

"It may be said that the testimony in the case was taken before a single judge sitting in California on

* Rule 8 of the 1936 Rules as amended.

circuit. It was taken at different sessions, Cline, J., presiding at the first session and Evans, J., at the second. Neither of these judges was a member of the First Division which finally passed upon the case. We have examined the record with care. In many instances objections were sustained and, upon the whole, we do not feel that the admission of any of the testimony which was admitted proved prejudicial to appellant's case and constituted reversible error.

"In this somewhat peculiar jurisdiction it not infrequently happens that testimony is taken before a single judge on circuit who does not participate in the final determination of the case. Such judge may, not improperly in our opinion, admit testimony, even though it borders upon the doubtful, and leave it to the full division to winnow the wheat from the chaff, and so long as it does not appear that illegitimate evidence influenced the decision no harm results and no reversible error is committed. We may add that, upon the whole, we regard the rulings of the single judges before whom the evidence in this case was taken as being quite fair. They obviously sought to keep it within legitimate bounds."

It will be noted from the cited case that the appellate court offered no comment concerning the jurisdictional question discussed herein, with respect to the right of a division to review the action of an individual judge on circuit. Such question was not assigned as error nor discussed in the briefs.

In addition to the cited case, which is the only pertinent discussion I have been able to find by the Court of Customs and Patent Appeals on the subject presented herein, there have been cases in which a division of this court has disturbed the ruling of a single judge on circuit, but in none of those cases did the parties raise the question of the right for the division to do so.

In Federated Metals Corporation v. United States, 73 Treas.Dec. 574, T.D. 49493 (decided March 28, 1938), the single judge on circuit excluded certain publications offered by plaintiff as evidence to show commercial meaning or understanding of tariff terms. When the case was taken up for decision by the second division, the ruling of the trial judge was reversed and the trade papers were admitted in evidence. It might be added that the same judge, who heard the case on circuit, wrote the opinion for the division.

In Wilbur-Ellis Co. v. United States, 73 Treas.Dec. 1008, T.D. 49626, a motion to incorporate the record in an earlier case was granted by the single judge who heard the case on circuit, but when it came before the division for decision, the action of the trial judge was reversed. The division's ruling, excluding the record sought to be incorporated, was affirmed, Wilbur-Ellis Co. v. United States, 26 C.C.P.A.,Customs, 403, C.A.D. 47 (decided March 6, 1939), but no question was raised concerning the division's right to review and hence no discussion thereon was offered.

Schillito Co. v. United States, 73 Treas. Dec. 1080, Abstract 37499 (decided January 6, 1938), and Paramount Pictures, Inc. v. United States, 20 Cust.Ct. 144, C. D. 1098 (decided March 25, 1948), also embody rulings by the divisions, reversing actions by trial judges on circuit, relating to motions for incorporation of records in previously tried cases.

There are several decisions where a division of the court has reviewed the ruling of a single judge on circuit with respect to motions to amend pleadings. Such review, however, is provided for in rule 9 of this court, which has been accepted as authority for the division to so act.

The importance of procedure requiring a trial judge to decide and conclude litigation over which he has presided was

very forcefully propounded in United States v. Nugent, 6 Cir., 100 F.2d 215, 217, which was an action brought under the Tucker Act, 28 U.S.C. § 41(20), for alleged appropriation by the United States of private property. Evidence was heard in October 1934, before a district judge, who resigned from office in July 1935, without disposing of the case. Another district judge, duly designated, made findings of fact and conclusions of law from stenographer's minutes of the testimony taken before the trial judge, and entered judgment thereon without hearing the witnesses. In holding such proceedings to be fatally defective, the court said:

"The question whether such a case can properly be tried by two different judges, one hearing the testimony and the other making ultimate findings and conclusions, is of extreme importance, as the findings of the trial court are conclusive and have the effect of a jury verdict unless manifest error exists. * * * This rule is based largely upon the superior opportunity which the trier of the facts has to ascertain the truth, due to personal observation of the witnesses. * * * The trial judge has the right and duty to observe the bearing and demeanor of the witnesses, and where the evidence is conflicting, he may take these things into account. Such personal observations cannot be transferred to the printed page, and yet the judge may, and often must, give them weight in making his decision. In the present instance it is difficult to see how the judge who entered the findings had any proper opportunity to decide any question affected by the credibility of the witnesses. While the statute does not in terms require that the same judge shall hear the evidence and make the findings, since by universal practice and tradition these findings are based upon personal observation of the witnesses, and are conclusive upon the reviewing court, the statute impliedly requires that the same judge who hears the case shall make the findings and conclusions, and this requirement is mandatory."

The foregoing is certainly applicable to the situation discussed herein. There is absolutely nothing, either directly or by implication, in the law governing the United States Customs Court which requires a judge, other than the one hearing the evidence, to make findings therefrom. Unless and until Congress, by statute, so directs, in prescribing the procedure to be followed by members of a court created by it, any rule of court attempting to substitute a contrary procedure governing such court, would be clearly, *ultra vires.*

Whatever may be said concerning the consistent practice followed in this court of a division reviewing actions of individual judges on circuit, or however long such procedure may have been in existence, or how difficult it might be to revamp the practice which the court has followed in the past, there is nothing in the language of section 518, supra, or in any other statute, nor is there any decision, that has either been called to my attention or that I have, by careful study, been able to locate, vesting in this division the right to entertain in a case submitted for decision before a court on circuit, a motion, like the one before me, to review rulings of individual judges on circuit before whom the witnesses were heard. This division is not endowed with appellate jurisdiction to review, either affirm or reverse, an action taken or a ruling made by a court on circuit. If this division has any jurisdiction whatsoever, it is solely for the purpose of deciding the case on its merits, on the record as presented and in accordance with the law applicable thereto. This does not mean I am conceding the division has such jurisdiction under the law, because the doubt that such exists deserves thorough argument and expression of opinion at the proper time.

To follow such practice and accept jurisdiction in this matter would be tanta-

mount to recognizing divisions of this court as sole trial judges in protest cases, and to strip individual judges on circuit of the power and right they possess as United States judges to try cases having been assigned for that purpose by the presiding (now chief) judge under clear and specific authority therefor as found in the statute, section 518, supra. It would mean simply that such individual judges on circuit would take testimony for the future consideration of their colleagues, as divisions, awaiting a transcribed record in New York where they happen to be permanently located. Such practice, if allowed, could be compared to the taking of testimony by commissioners or examiners, clothed with no authority to make final decisions in such cases because the record therein would be transcribed and later delivered to the appropriate commission or board for ultimate disposition. Should this be done, it would violate the clear intent of Congress, giving to litigants before this court, the benefit of United States judges, hearing and determining their cases.

It is to be presumed when the presiding (now chief) judge of this court decides to designate a single judge to hear and determine litigation throughout the country that he finds no necessity for a division to be so assigned. If, however, the importance of a docket at some port other than New York suggests the advisability of a division being assigned thereto, and it is later found to be inconvenient, because of congested dockets in New York, for three judges to preside at a so-called out-of-town assignment, then counsel could be required to agree that all members of the division be permitted to participate in the decisions of the cases, just as has happened on numerous occasions in New York when a member of a division has been absent from the actual trial of a case.

A look at other provisions of the statute presents immediate and uncontrovertible conclusions. For instance, section 501 of the Tariff Act of 1930, 19 U.S.C. § 1501 (now 28 U.S.C.1948 ed., chapter 169, § 2631), deals with appeals for reappraisement as distinguished from litigation relating to classification of merchandise. The law, section 501, supra, provides for the assignment of such cases to a single judge, and after decision by the single judge, the right exists to apply for a review of such decision by a division of this court (now 28 U.S.C.1948 ed., chapter 169, § 2636). If it had been the intention of Congress that the same right of review was to be applicable in classification cases, Congress would have said so. Even if such right had been definitely created in the statute, I doubt whether a case, properly assigned to a member of the United States judiciary to hear or hear and determine the litigation, could be acquired by another group of judges at the conclusion of the hearing and after submission, without the trial judge even participating in the final decision, and dispose of such litigation. There is so much sound reasoning and basic philosophy associated with the development of jurisprudence of United States courts in this country found in such practice, that it makes it easy for me, although it does challenge a long-continued practice before this court, not to permit its continuance.

If this division has jurisdiction ultimately to decide this case and in doing so is forbidden to review or reverse rulings of any of the trial judges sitting on circuit during the progress of this case, then, upon review by the Court of Customs and Patent Appeals, there might be a reversal of such decision by a division because of error committed by a single judge on circuit. That such practice is intended should be free from all doubt, and not accepted without legal intendment therefor.

The word "determine," as defined in Funk & Wagnalls New Standard Dictionary, means "to reach a definite purpose concerning; form the intention of doing or not doing; resolve; decide"; and also "to terminate; finish; bring to an end; * * * to put an end to; end," as illustrated, "That he and Caesar might *Determine* this great war in single

fight! Shakespeare *Antony and Cleopatra* act iv, sc. 4."

The word "decide" is defined in the same dictionary as follows: "To determine the issue or conclusion of; * * to end by a decision or judgment; * * as, to *decide* a dispute; *decide* who is right."

Section 501, supra (now 28 U.S.C.1948 ed., chapter 169, § 2631), says that a judge of the United States Customs Court shall "after affording the parties an opportunity to be heard, *determine* the value of the merchandise." [Italics mine.] Sections 514 and 515 of the Tariff Act of 1930, 19 U.S.C.A. §§ 1514, 1515, relate to protests against collectors' decisions and, after setting forth fully the manner in which such litigation shall proceed, provides "If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and *determination,* as provided by law. Such *determination* shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law." [Italics mine.] Section 516 of the Tariff Act of 1930, 19 U.S.C.A. § 1516, is entitled "Appeal or protest by American producers" and is divided into subdivisions (a), (b), (c), and (d). Subdivision (c) is entitled "Hearing and determination" and provides for transmission of all necessary papers and exhibits to the United States Customs Court for due assignment and *determination* of the proper value or of the proper classification and rate of duty.

During the able oral argument of this case by counsel, it was suggested that Congress in creating this court is presumed to have been familiar with the procedure followed by its predecessor, the Board of General Appraisers, and intended such procedure to continue because all the provisions governing this court are practically identical with the law that governed its predecessor, and that to do otherwise would defeat the workability of the existing law. It was further suggested that everything possible should be done to construe the statute governing this court in a way that will assure its workability. I am not at all alarmed should the present practice, hereinabove outlined, be discarded, that something just as expedient, if not more so, could not be devised.

Should the presiding (now chief) judge find that litigation before this court at ports other than New York is important enough to deserve the assignment of a division of the court to hear and determine the same, just as has been, and is now, taken for granted in practically all litigation of a certain type at the port of New York, regardless of its magnitude, it certainly cannot be said that the presiding (now chief) judge should not so designate a division of three judges, simply because of the effect such assignment might have on the dockets at New York. Litigants requesting and desiring a division to hear and determine their cases should be treated alike, and without the discrimination existing as the dockets are now handled.

When, however, the presiding (now chief) judge directs a single judge to preside over dockets at ports other than New York, such single judge and the litigants before him should recognize in advance the fact, which seems to me to be free from any serious doubt under existing law, that it is the responsibility of such single judge, when cases are submitted before him, to determine the same.

The fact that this court, immediately upon its creation, saw fit to adopt almost

*in toto* the procedure of its predecessor, which was not a court of record, is no excuse whatsoever, even at this late hour, to now continue it under existing statute. It is fortunate, as I see it, that opportunity has at last been presented to steer the procedure of the court in the direction the statute clearly intends and not in a way that seems more appropriate to present day administrative inquiries, as distinguished from the trials of cases before a United States court.

In this proceeding the presiding (now chief) judge, as hereinbefore stated, designated the individual judges who heard the case on circuit, including Judge Cline, before whom the litigation was finally submitted, to proceed to ports outside New York "for the purpose of hearing or of hearing and determining cases assigned for hearing at such port." Judge Cline concluded this case, and I feel it is far beyond the jurisdiction of this division to consider rulings made by her herein.

A mere glance at the voluminous record, the realization that a study of the entire case should be made to intelligently pass upon rulings made by any of the trial judges, and how such rulings might affect the entire conduct of the various trials by the several judges, present strong reasons for the position I take herein.

The second part of the motion, addressed to this division, is that a commission be issued to take certain testimony. What, if anything, the single judge before whom the case was finally submitted, would care to do with such request, I do not know, but I am of the opinion that the division is without any jurisdiction whatsoever to issue such commission.

I will sign an order denying plaintiffs' motion for reasons herein expressed. (Order on initial memorandum followed.)

The following additional observations are prompted from a reading of the majority opinion. At the outset, the majority, in referring to the statutory construction of the United States Customs Court and its application to protest cases found therein, cites United States v. Park & Tilford, 4 Ct.Cust.App. 293, T. D. 33514, as authority for the procedure followed in this case. It will be noted that the decision therein was handed down in 1913, when the Board of General Appraisers, and not the United States Customs Court, was functioning. I cannot subscribe to acceptance by this court as precedents for its every action the interpretations of decisions and other actions taken by the Board of General Appraisers prior to 1922, because there is a very considerable difference. As is stated in 25 C.J.S., Customs Duties, § 178:

"Formerly the proceeding (referring to the proceeding before the Board of General Appraisers) was inquisitorial and the reviewing body did not act as a judicial tribunal, as stated in § 179 infra; since the enactment of the Tariff Act of 1922 the reviewing body (meaning, of course, the United States Customs Court) acts judicially in determining such appeal. [Parentheses mine.]"

It should be borne in mind, also, that the Park & Tilford case, supra, involving merchandise entered at the port of New York, was, upon its receipt, immediately assigned to Board 1, before whom the dispute was submitted upon the papers in the case. The decision, however, was rendered by Board 3, and that brought up the jurisdictional question of said Board 3 to decide the case. The court said:

" * * * the record here shows the hearing of a case by Board 1, to whom it has been lawfully committed for hearing and determination and whose jurisdiction is not challenged, while the decision complained of has been rendered by another board, having no appellate jurisdiction of Board 1, with no showing whatever of record by what right or authority such other board assumed

to decide the case or claims jurisdiction thereof and whose jurisdiction is directly challenged.

"Under this state of facts and in view of the principles hereinbefore set forth it is apparent that Board 3 had no jurisdiction to determine this case and that its judgment therein is therefore wholly void. The case is still pending before Board 1 for determination and decision."

The majority accepts rule 41 of this court as mandatorily determining the jurisdiction of the several divisions of the court for litigation as it develops. In other words, the majority states that " * * * under the automatic operation of rule 41 of this court, it must follow that the jurisdiction of the division over a classification case attaches immediately upon the expiration of the statutory time within which the collector has authority to act * * *, subject, of course, to the power of the chief judge to assign or reassign any such case *before* trial and under the rules of the court to another *division* for hearing, determination, or both."

It would have made different reading if the majority had continued and stated that the assignment of cases in the ordinary course is subject also to the assignment of such cases to an individual judge on circuit. The statute confers authority for the chief judge, as aforesaid, to so assign a single judge or a division, and when that is done jurisdiction with the single judge or the division is established and no rule of court can disturb it.

I insert another quotation from the majority:

" * * * The only manner in which the jurisdiction of the first division over the case could have been terminated or transferred would have been by reassignment of the case by the chief judge before trial under the power granted in 28 U.S.C. (1948 revision) § 253, or its

predecessor statute, and that was never done."

If this was not done, and I think it was, what possible meaning can be attached to the order of the presiding (now chief) judge, issued under authority of the statute, directing Judge Cline, and prior thereto other judges, to proceed to Seattle and other cities to hear and determine cases on such dockets. I know of no reason why a single judge on circuit cannot hear, conclude, and decide such cases. I am inclined to the view if such requirement is imposed it will tend to considerably expedite the trial of cases before the court, and relieve the tendency, prevailing at present, of a single judge on circuit to grant continuances quite liberally because of the past practice encouraged by the knowledge that eventually in most cases he would have· nothing whatever to do with the actual decision in the case.

Thomas Prosser & Son v. United States, C.C., 1907, 158 F. 971, and United States v. Saunders, 1914, 5 Ct.Cust. App. 270, T.D. 34446, are cited as authority for the statement that "jurisdiction of classification cases resides in the *Division* and not in the Court as a whole." Both of these cases, as the dates indicate, were long before the creation of the United States Customs Court. It is, nevertheless, interesting to quote from the opinion in the Saunders case, supra, which involved litigation initiated at Buffalo, N. Y.:

" * * * The protest came on for hearing before Board 3 on June 18, 1913, at which time, the Government and the importers being represented by counsel, a trial of the issues presented by the protest was had and the matter submitted for decision. After the trial and submission of the case, for some reason not set out in the record, the whole proceeding was transferred to Board 1, which, apparently without a trial and without giving either of the parties any opportunity to be heard, rendered a decision sustaining the protests."

From the decision of Board 1, the Government appealed, contending that Board 1 was without jurisdiction and therefore the decision was invalid and void. That contention was sustained.

The position taken by Judge Smith in the Saunders case, supra, is revealed in the following language in his decision:

" * * * If, therefore, the case at bar originally arose in Board 3, or was assigned thereto, that board had jurisdiction not only to hear but also to determine and decide the matter, and that necessarily implied that none of the other boards was vested with authority either to try or decide the issues which the protests presented. It is true that by virtue of the very same section the president of the board of nine general appraisers may at any time *before trial*, under the rules of the board of nine general appraisers, assign or reassign any case for hearing, determination, or both, but neither that provision nor any other that we can find contemplates that the trial of a case may be had by one board and that it may be then reassigned or transferred to another for decision. [Italics quoted.]"

I expect Judge Smith would say today under the practice in effect in this court that a single judge having been assigned —and unquestionably in response to legal authority—*to* hear and determine a case, and as a result thereof, has heard the witnesses, presided over a considerable portion, if not all, of the trial, and had the case submitted to him, that it may not then be "reassigned or transferred to another," to use Judge Smith's language, whether one judge or a division of three, for decision, but must be decided by the said single judge. Judge Smith aptly said "The right of a judicial tribunal to take cognizance of a proceeding depends on whether it has jurisdiction of the subject matter and the parties, but its authority to adjudicate the rights of litigants does not accrue until an opportunity has been afforded to the parties not only to appear, but to appear and be heard," and because there was no hearing in the protests covered by the Saunders case, supra, before Board 1, the determination by said board was in excess of its authority.

The majority cites volume 17, Corpus Juris (published in 1919), page 608, to support the present practice in this court in the disposition of protest cases. It seems fair to say that such citation is merely a statement of the practice before the Board of General Appraisers, taken from decisions found in the majority memorandum.

At this point, I would like my readers to turn back and read that part of the majority memorandum, beginning with the sentence:

"When the protests were first received by the court in August 1945 *the jurisdiction of the first division of the court attached immediately* * * *—a practice which is necessarily implied by the rules of the court. Rules 8, 9, 17, 40, and 41."

This statement gives a clear idea of the extent to which the majority is willing to take this court. It means that a single judge is not sent on circuit to determine anything—certainly not to render a final decision when the case is submitted to him—as I contend is his duty under the law. If this practice is continued as an accepted procedure for single judges of this court, then we may hear the question asked, "When is a United States judge not a United States judge?," and answered, "When he is a single United States Customs Court judge on circuit."

It is undoubtedly correct that a few decisions by this court have been handed down embodying views opposite to those I express herein. Paramount Pictures, Inc. v. United States, 20 Cust.Ct. 144, C.D. 1098, cited by the majority, is one in which I participated. In that case, however, it should be noted that the single judge on circuit, actually in Los Angeles, heard the case and had it sub·

mitted before him. Later, in compliance with the present practice of this court, because of the subject involved, the case was referred to the first division for decision, of which division the said trial judge on circuit was a member, and accordingly participated in the division's opinion and judgment. In other words, the reversal by the division of a ruling made by the single judge on circuit was a reversal of his own ruling by the said single judge, himself, as a member of the division deciding the case. If such procedure were to be followed in all protest cases tried at ports other than New York, and the parties were required to waive the presence of a full division of three at the trial with knowledge that the judge actually conducting the trial of the case and before whom it was submitted was of the division ultimately to decide the case, that would be in accordance with the practice existing in the trial of protest cases in the city of New York and there would be no complaint about it.

The majority has stated for the first time, so far as I have been able to find in any judicial interpretation covering this court, that—

" * * * the single judge on circuit at outports would merely 'hear' protest cases and the jurisdiction granted the single judge on circuit never at any time included the right to decide and determine protest cases and render final judment therein, *so that the single judge before whom these cases were submitted was not of concurrent jurisdiction* with the first division. Under the statutory scheme and arrangement for the distribution of jurisdictional powers as between the division and the single judge on circuit, the latter had the power and judicial authority to conduct the hearings and to make necessary rulings for the proper conduct of the hearings, rules 8 and 9, but said jurisdictional powers of the single judge on circuit never included the authority to hear *and* decide the cases, including the

authority to pass upon every question of law and fact necessary for a proper determination of the cases, i. e., the rendition of final judgment therein. United States v. Saunders, supra; United States v. Kurtz, Stuböeck & Co., supra. The ratification or reversal by this division of any rulings of the single judge before whom the protests were submitted would be merely the exercise of judicial discretion by the real and actual trier of the case and would in legal contemplation and effect be a 'review' of its own acts—*rulings which had been made for and on behalf of the division by the single judge.* This division, retaining at all times exclusive jurisdiction to 'hear and determine' the protests, also retains until its final judgment the sole right to pass upon every question of law and fact necessary to a proper determination of the cases. United States v. Saunders, supra; United States v. Kurtz, Stuböeck & Co., supra."

I have been unable to find, anywhere, any authority for the foregoing broad statement. It is the first time any court, certainly the United States Customs Court, has attempted to say that Congress contemplated, when it said that a single judge on circuit could be designated to hear and determine litigation, that it was intended to restrict such single judge to a mere hearing of such cases and have nothing to do with the decision thereof. How it can be said that the division, as in the instant case, would be exercising its judicial discretion as the real and actual trier of this case, when the great majority of hearings were before single judges on circuit, and the case actually submitted before such a single judge, is something I cannot follow.

Let me quote further from the majority memorandum:

" * * * By the provisions of 28 U.S.C. (1948 revision) § 254, and its predecessor, 28 U.S.C.1946 ed. §

296, the chief judge was empowered to—

" ' * * * designate a judge or a division * * * to proceed to any port within the jurisdiction of the United States * * *.'

"By the express terms of the foregoing statutory provisions, the former presiding and now chief judge was given a power of discretion to designate either a single judge or a division of three judges to proceed to any port. The then presiding judge having exercised the discretion to send a single judge to the port of Seattle, such discretion may not be reviewed or challenged in this or in any other court, there being no showing that the designation of the single judge was not in conformity with law. Martin v. Mott, 12 Wheat. 19, 25 U.S. 19, 32, 6 L.Ed. 537."

Should the majority assume that the chief judge had designated a division instead of a single judge, as it concedes he could have done, then I ask, would the division so sent to ports, other than New York, be merely acting for the first division, or would the division on circuit be required to render a decision? There could be but one answer. If, clearly, the right of the special division on circuit is recognized then certainly the single judge on circuit, when serving in response to an order by the chief judge, is entitled to equal dignity and respect.

Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904, is cited by the majority as authority for this statement:

" * * * Congress is empowered to classify litigation and authorize, or permit under a grant of discretionary power, a single-judge designation or a designation of a division of three judges in the discretion of the chief judge."

This case was an appeal from the District Court of the United States for the Eastern District of Michigan and dealt with condemnation proceedings.

33 F.2d 918. It has no application whatsoever to the statement it is offered as supporting.

"Customs Valuation in the United States," a recent publication by R. Elberton Smith, has been cited at length with apparent approval, by the majority. It seems to be merely a restatement of much adjudication of the Board of General Appraisers' regime, and some current comments considered appropriate thereto. Not meaning in any way to criticize the publication because it is interesting reading, as far as it goes, I know of no reason to accept it as an authority from which I am willing to quote in this discussion.

The majority accepts the present situation in this language:

" * * * In order to carry out the statutory plan and intent to secure more important advantages and benefits for the importers and general public, such as three-judge-decision in protest cases in lieu of the abolished jury trial, the relatively less important benefits and advantages of divisions seeing and observing the witnesses and the demeanor thereof had to be dispensed with in order to realize and secure larger and vastly more important and vital statutory objectives."

This is tantamount to saying that seeing and observing witnesses contributing to the record in important litigation is of no consequence to the final decision, and the impressions or opinions of the trial judge over such deliberations who had an opportunity to see and observe such witnesses is not to be of any consideration whatsoever. With this point of view I take violent issue. It is much to be preferred—even if the past practice before this court should be considerably changed—that the divisions or single judges, finally deciding litigation before this court, shall have the benefit of the views of individuals, or in conceivable cases other divisions before whom the record in the case is made. Something akin to the practice before

the Court of Claims and contemplated in pending legislation to govern the new Tax Court is what I have in mind, or some other procedure which can be easily formulated.

The next reference by the majority discloses a citation which, as I read it, has little, if any, application to the statement it allegedly supports. For instance, the majority states that "Due process of law does not require that the judge or division of three judges which renders the judgment actually see and hear the witnesses testify and observe their demeanor" and cites De la Rama v. De la Rama, 241 U.S. 154, 36 S.Ct. 518, 60 L. Ed. 932, as authority therefor. A mere reading of the decision by the Supreme Court in that case, which was an appeal from the Philippine Supreme Court, discloses that the reason for that part of its statement, which the majority embraces, was because of the agreement of the parties in that litigation that the record previously filed in the case before one judge was to be the record before a subsequent judge who had taken over upon the death of the trial judge.

The majority declines to accept the Nugent case, supra, which was a proceeding brought under the Tucker Act, 28 U.S.C. § 41(20), as pertinent to this discussion. Of course, the opinion therein followed an action brought under the Tucker Act. However, the reasoning outlined by the able jurist in his opinion, whether it dealt with the Tucker Act or the most inconspicuous statute one can imagine, presents sound and logical common sense and reasoning, such as should be applicable to this court.

The majority asserts that because of the extensive territorial jurisdiction of the United States Customs Court, it is wholly impractical to send from New York to various ports of the United States, divisions to conduct hearings. Such a position was never asserted before the committees of Congress, and I doubt if it ever will be. Certainly, litigation in parts of the United States, other than New York, is entitled, if the chief judge is satisfied such assignment

is necessary, to have a division dignify its hearings in protest cases just the same as litigation of not only important protest cases in New York but every protest case even though it involves only "a bag of peanuts" is arbitrarily provided for under existing practice.

As I have said in other language, but because of its importance repeat again, the practice resorted to in hearing protest cases in New York by less than a full division actually being on the bench during the taking of testimony in a case, and the full division, designated by the chief judge to ultimately decide the case, being by agreement of the parties permitted to do so, can be easily worked out for litigation at other ports; and if not, other expedients adopted.

Considerable apprehension is noted in reading the majority's views over the possible lack of uniformity in judicial decisions covering customs matters should my views prevail. I know of no reason to say that more appeals to the Court of Customs and Patent Appeals would follow, but even if such would be the case, little if any harm could result. Neither am I willing to accept the statement that decisions of single judges would not carry just as much weight and as much uniformity as the existing practice of decision by divisions, if under certain circumstances it would not be practical to have a division assigned to such cases.

I conclude with this observation. The majority states:

"If we consider that the single judge, when hearing a protest case on circuit, *acts as and for the division* having cognizance of the subject matter, and, in fact, *is* the division on circuit, the long-established and customary distribution of jurisdictional powers as between the single judge on circuit and the division becomes rational, reasonable, appropriate, and practicable, and the statute becomes workable."

This statement embodies in clear language the position of the majority. The

majority accepts as a definite finding, and imposes as the law, that a single judge of this court, when hearing a protest case on circuit, acts for the division having cognizance of the subject matter. My position is directly opposite to that viewpoint.

I look upon judges of the United States Customs Court as members of the Federal judiciary, vested with powers and authority conferred by statute the same, no different whatsoever, as that enjoyed by every Federal judge in this country. It is beneath the dignity of such a judge —not speaking personally—but looking only to the judiciary as we are proud to recognize it—to label him, while traveling throughout the broad jurisdiction of this court to hear and decide litigation, and to have it said that he is merely there to act as and for a judge or judges other than himself. I recognize that the long-standing practice before the Board of General Appraisers, which has been carried through the years by this court, has its good points, and I know of no reason why much of the experience of that day cannot be borrowed if a readjustment of the practical application of the law governing this court is found to be necessary.

This may not be the most appropriate vehicle to carry such a lengthy discussion, for much of it has little prospect of appellate review, but it is the first conveyance of its kind to come my way since being a member of this court, so I take passage with a strong feeling that, if not now then ultimately, at least some of the reasoning herein will find vindication in the fact that the United States Customs Court functions as intended.

As I stated in my earlier memorandum, hereinbefore set forth, "Judge Cline concluded this case, and I feel it is far beyond the jurisdiction of this division to consider rulings made by her herein."

For the foregoing reasons, I am signing a separate order denying plaintiffs' motion for review.