**No. 56518.**—Modern China Products Co., W. X. Huber Company *v.* United States, petition 6756–R (Los Angeles).

MOLLISON, Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties accruing by reason of undervaluation on entry of certain embroidered cotton articles imported from China.

The evidence offered in support of the petition is the oral testimony of one David Chow, who at the time of importation and entry (June 1940) was a partner in the Modern China Products Co., one of the petitioners herein (the other petitioner being the customhouse brokerage firm which made the entry). Mr. Chow testified that the general manager of Modern China Products Co. at that time was a Mr. C. S. Kwan, who was also one of the partners in the firm; that the firm maintained an office in Shanghai under the name of China Products Co.; and that Mr. Kwan was located there at the time the merchandise involved was purchased.

Mr. Chow also was in China at the time the merchandise in question was purchased, but the order therefor was given by Mr. Kwan. The merchandise was purchased from Djin Feng Ho of Shanghai, and Mr. Chow testified that he saw the items involved.

As to the actual transaction of purchase, the record is not very clear on the part Mr. Chow played. He testified definitely (Tr. p. 3) that he did not order the merchandise, but that Mr. Kwan ordered it. In his later testimony concerning the purchase he used the pronoun "we," and it does not appear whether he meant thereby that he took part in the purchase or whether he was referring to partnership action taken by Mr. Kwan alone.

It appears that the merchandise was exported to the United States on the same vessel which brought the witness back, and upon receiving the consular invoice, he presented the same, along with the bill of lading and the commercial invoice, to the customhouse broker, and, being unfamiliar with customs practice, he gave no instructions or other information to the customhouse broker but relied entirely upon the latter for the making of the entry.

Appraisement of the involved merchandise was not completed until October 1941, and although an appeal for reappraisement was filed, it was not prosecuted because shortly thereafter Pearl Harbor occurred, and Mr. Chow entered the armed forces of the United States. In the meantime, the firm did not prosper, and the business was closed, and Mr. Kwan went back to China. The appeal for reappraisement was subsequently abandoned, and the additional duties here sought to be remitted thereupon accrued.

It is alleged in the petition that—

* * * the merchandise was entered at what was believed by the entrant to be a legally sufficient value, * * *

and that—

* * * said merchandise was invoiced and entered at the prices actually paid therefor.

Mr. Chow's testimony does not fully support these allegations. His testimony on direct examination as to the prices shown on the invoice, and at which entry was made, is as follows:

Q. How did you arrive at the price that was to be quoted to you?—A. We bought from the wholesale house.

Q. The price which you received was a wholesale price?—A. Yes.

Q. And was that the price that appeared on the invoices when you received them?—A. Yes.

Q. Did you ever receive any other invoices covering this merchandise?— A. No, sir.

Q. Did you know whether the prices which you received were lower than that which this company was offering to other people?—A. They sell to anybody at the same price for export. (Tr. p. 5.)

How he knew that the seller would sell to anybody at the same price for export is not shown in the record.

On cross-examination on this subject, he first indicated that there was a market price for such merchandise, but immediately thereafter, in the same answer, indicated that the final price was the result of bargaining, his testimony being as follows:

X Q. How did you arrive at the price for the merchandise? How did you set the price? How did you agree upon the price with the seller?—A. There is a market price which you buy it from them. They ask how much, and we talk over how much to pay. (Tr. p. 7–8.)

We do not think the record is such as establishes that the witness (who caused the goods to be entered) knew or had reason to believe that the prices shown in the invoice, and at which entry was made, represented the "legally sufficient value" thereof, nor does it even show that the prices shown in the invoice were the prices actually paid for the goods. The court is not unmindful of the fact that after the lapse of considerable time, as has occurred in this case, it is difficult satisfactorily to establish the facts of a transaction. However, giving the testimony of Mr. Chow all the weight it could possibly have, it nevertheless falls short of establishing such facts as would warrant the court in finding that entry of the merchandise at less value than that found upon final appraisement was without intention to defraud the revenue of the United States, to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

The petition for remission of additional duties is accordingly denied.

CONCURRING OPINION

COLE, Judge: This litigation was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case, 28 U. S. C. (1946 ed., Supp. III) § 254. As I have previously stated in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, I feel that such cases are properly for the individual trial judge to decide, and beyond the jurisdiction of the division. But such view continues as the minority expression of this division, and as much litigation before the division is dependent upon my participation in a decision of the same, I am, for the purpose of expediting the work of the court, participating in this matter and concurring in the judgment attached thereto.