(C. D. 1446)

Jules Borel & Company v. United States

United States Customs Court, First Division

(Decided July 9, 1952)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Cole, Judge: Plaintiff imported a dust-like material, conceded by the parties to be composed of 99.60 per centum metallic silver and traces of less than one-tenth of 1 per centum each of magnesium, aluminum, calcium, iron, and oxygen. The collector, in his report forwarding the official papers to the court, characterized the merchandise as silver powder, and classified it as a chemical element, not specially provided for, under paragraph 5 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 5), and accordingly assessed duty at 25 per centum ad valorem.

Plaintiff makes several claims. The principal one invokes the provision for "bronze powder not of aluminum" in paragraph 382 (a) of the Tariff Act of 1930 (19 U. S. C. §1001, par. 382 (a)), carrying a dutiable rate of 14 cents per pound. Alternative claims are for classification as a nonalcoholic powder for cleaning or polishing, not specially provided for, at 7½ per centum ad valorem under paragraph 13 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802; or as a dry or ground color, stain, or paint, not specially provided for, under paragraph 66, as modified by T. D. 51802, *supra*, with duty assessment at 12½ per centum ad valorem; or under the provision for "flitters and metallics, manufactured in whole or in part" in paragraph 382 (a), *supra*, having a dutiable rate of 12 cents per pound; or on the free list

in paragraph 1664 of the Tariff Act of 1930 (19 U. S. C. §1201, par. 1664), which provides for "Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for."

The case was heard and submitted before a single judge on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254). The right of the division to assume jurisdiction under such circumstances was the subject of *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175. The views of the writer of this opinion continue as the minority expression from this division on the matter. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering to my position in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am preparing this opinion and participating in the judgment attached thereto.

Two witnesses were called by plaintiff. A brief outline of the testimony of each follows.

Mark Borel, a partner of the importing company, stated that as exclusive agent in this country for the so-called "Ducor powder" in question, the only outlet therefor is for use in finishing watch dials.

George Joseph Harris, associated with Kirk Dial of Missouri, United States purchaser of the present merchandise, whose business includes the servicing of the jewelry trade which work provides for dial finishing, described how the commodity in question is applied and the purpose it serves on watch dials. This powder, being pure silver, is never used as such. To do so would be too expensive, so it is diluted with very fine, powdery salt, and then mixed with water, creating the desired color. The material is applied with a brush, or by rubbing, across the clean, dry, metal watch dial, resulting in a white mat finish, or silver finish. The sole purpose is to give color to the watch dial. The powder neither cleans nor polishes.

The foregoing established facts are sufficient to preclude the present merchandise from classification as a cleaning or polishing powder, under paragraph 13, as amended, *supra*; or as a color, stain, or paint under amended paragraph 66, *supra*; or as a metallic mineral substance of a kind or class contemplated by said paragraph 1664; or within the provision for "flitters and metallics" in paragraph 382 (a), *supra*. Those claims alleged by plaintiff are overruled, leaving for determination the sole question whether the material is provided for in said paragraph 382 (a), under the provision for "bronze powder not of aluminum," as claimed.

In this connection, the record contains reference to powders, other than the one in question, used for "dusting" watch dials, particular

emphasis being given to aluminum bronze powder, gold bronze powder, and copper bronze powder, displayed on plaintiff's illustrative exhibit 4. The descriptive words, "aluminum," "gold," and "copper," are suggestive of the color ultimately produced, and have no relation with respect to the actual composition of the material. As stated by the witness, Harris, "the copper, gold and aluminum could be other metals actually, but we order them as bronze powders only for the color." Furthermore, those powders are used without any diluting agent. In the condition as received, they are applied, or "dusted," in dry form to the varnished or lacquered surface of a watch dial. Such bronze powders are materially different from the merchandise under consideration, and are not to be associated with a determination of the present issue. Any proof in connection therewith does not influence our finding as to classification of the powder in question.

Defendant's only witness was the Government chemist whose analysis of the merchandise was accepted by both sides. Based upon analysis of bronze powder over a period of 10 years, the witness stated that he always found it to contain "from 70 to 95 per cent copper, with the balance of zinc." He did not regard the material in question as bronze powder because "It is not a base metal, and it is not composed of copper nor zinc nor tin."

*Baer Bros.* v. *United States*, 52 Treas. Dec. 636, Abstract 4124, which arose under the Tariff Act of 1922, is relied on by plaintiff to support the claim for classification as bronze powder. The issue therein was whether the merchandise was a pigment, as assessed, or bronze powder, as claimed. The substance was known and recognized in the trade as "Solar bronze powder," and consisted of a combination of different metals ground to powdered form to which had been added stearin or lac to hold it together, for its use on picture frames, radiators, and moldings. Based upon those facts, the claim for classification under the *eo nomine* provision for bronze powder was upheld. The type of merchandise under consideration and the question before us are clearly distinguishable from those presented in the cited case which, therefore, has no application.

Counsel for the parties have discussed the issue from the viewpoint of the common meaning, there being no proof to permit application of the principle of commercial designation. Several definitions are set forth in the respective briefs. Without quoting any definition, it can be said that the substance of each is to the effect that bronze powder is a metallic substance in fine, flaky form, resembling bronze, and usually qualified by a descriptive adjective indicative of a particular shade or color. A significant omission from each definition is the absence of any mention of a precious metal as one of the components of bronze powder. Funk & Wagnalls New Standard Dictionary; Webster's New International Dictionary; Thorpe's Dic-

tionary of Applied Chemistry (Fourth Edition, Volume II); Kingzett's Chemical Encyclopaedia. The common meaning supports defendant's testimony to the effect that the merchandise in question is not bronze powder.

A situation, analogous to that before us, was presented in *Roessler & Haaslacher Chemical Co.* v. *United States*, 56 Treas. Dec. 333, T. D. 43627, particularly as that case concerned a substance consisting of 98.50 per centum of metallic gold in powder form, which, before being used for gilding picture frames, was mixed with gelatin that had been boiled down in hot water. The gold powder was held to be classifiable as a chemical element.

In this case, it has been stipulated that the material in question consists of 99.60 per centum metallic silver, and an examination of the merchandise, plaintiff's exhibit 1, discloses it to be in powdered form. In other words, the commodity to be classified is silver powder. That silver is a chemical element, is fully supported by recognized authorities. Hach's Chemical Dictionary; Machinery's Encyclopaedia, Volume V. The silver powder, subject of the present discussion, is properly classifiable as a chemical element, not specially provided for, under paragraph 5, *supra*, as assessed by the collector.

The protests are overruled and judgment will be rendered accordingly.