(C. D. 1313)

J. B. ROERIG AND COMPANY *v.* UNITED STATES

## United States Customs Court, First Division

(Decided March 16, 1951)

*Martin, Hastings, Snyder & Rockwell* and *John C. Ray* (*George W. K. Snyder* and *John H. Rockwell* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Howard L. Harawitz, Dorothy C. Bennett*, and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: So-called darthronol and heptuna capsules, exported from Windsor, Province of Ontario, Canada, were entered at Detroit, Mich., where they were classified under paragraph 28 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 28), and accordingly were assessed with duty at 45 per centum ad valorem and 7 cents per pound. The collector's letter of transmittal, stating that "The merchandise covered by the annexed protest was classified in liquidation as Medicinal Preparation in capsules as coal tar product," reveals that the classifying officer invoked that part of the highly complicated paragraph 28, *supra*, reading as follows:

PAR. 28. Coal-tar products:
(a) * * *; acetanilide suitable for medicinal use, acetphenetidine, acetylsalicylic acid, antipyrine, benzaldehyde suitable for medicinal use, benzoic acid suitable for medicinal use, beta-naphthol suitable for medicinal use, guaiacol and its derivatives, phenolphthalein, resorcinol suitable for medicinal use, salicylic acid and its salts suitable for medicinal use, salol, *and other medicinals*; * * * [Italics added.]

Plaintiff claims that the merchandise is classifiable as drugs in capsule form under paragraph 23 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 23), which reads as follows:

PAR. 23. .Chemicals, drugs, medicinal and similar substances, whether dutiable or free, when imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, including powders put up in medicinal doses, shall be dutiable at not less than 25 per centum ad valorem.

Defendant's motion to dismiss on the ground that no justiciable issue is raised was denied in *J. B. Roerig & Company* v. *United States*, 24 Cust. Ct. 411, Abstract 54179. That action, however, does not preclude defendant from urging for a decision in support of the collector's classification.

Mention should be made that the classification as coal-tar products under said paragraph 28, carried a statutory mandate for appraisement on the basis of American selling price, section 402 (g) of the Tariff Act of 1930, of a similar competitive article manufactured in the United States, which, it has been agreed, becomes null and void if plaintiff's claim under paragraph 23, *supra*, is good. Such a conclusion will require reappraisement according to law, section 402 of the Tariff Act of 1930 (19 U. S. C. § 1402).

The case was heard and submitted before a single judge on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254). The right of the division to assume jurisdiction under such circumstances was the subject of *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175. The views of the writer of this opinion continue as the minority expression from this division on the matter. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering to my position in C. D. 1175, *supra*, but for the purpose of expediting the work of the court, I am preparing this opinion and participating in the judgment attached thereto.

Although both parties offered testimony—each side having introduced two witnesses—there is virtually no contradiction in the factual phase of the case.

Both classes or kinds of capsules under consideration possess therapeutic properties and are exclusively used for medicinal purposes. Hence, they are susceptible of classification either as drugs or as medicinals. *United States* v. *Wm. Cooper & Nephews, Inc.*, 22 C. C. P. A. 31, T. D. 47038. Darthronol is prescribed for arthritis; heptuna is used as a remedy for anemia. The formula for each, as agreed to by the respective parties, is as follows:

DARTHRONOL

| | |
|---|---|
| Vitamin D | 50,000 USP Int'l. units |
| Vitamin A | 5,000 USP Int'l. units |
| Thiamin | 3 mgms. |
| Riboflavin | 2 mgms. |
| Pyridoxine Hydrochloride | 0.3 mgm. |

Ascorbic Acid_____ 75 mgms.
Niacinamide_____ 15 mgms.
Calcium Pantothenate_____ 1 mgm.
Mixed Natural Tocopherols_____ 3.4 mgms.

HEPTUNA

Vitamin A_____ 5,000 Int'l. units
Vitamin D_____ 500 Int'l. units
Thiamin Hydrochloride_____ 2 mgms.
Riboflavin_____ 2 mgms.
Ferrous Sulphate USP_____ 4.5 grs.
Pyridoxine Hydrochloride_____ 0.1 mgm.
Niacinamide_____ 10 mgms.
Calcium Pantothenate D. R._____ 0.33 mgm.
With Liver Concentrate derived from Fresh
   Liver & Dried Yeast USP_____ 6.5 gms.

While those formulae do not specifically indicate or so state, the record is free from dispute in establishing that each component or ingredient of darthronol is a vitamin, the therapeutic element being vitamin A, and that heptuna consists of seven vitamins, plus ferrous sulphate and liver concentrate, with its therapeutic value being acquired from the ferrous sulphate. Neither of the substances— vitamin D in darthronol and ferrous sulphate in heptuna—supplying the therapeutic value to these capsules, is a coal-tar product or derivative therefrom. All of the other ingredients are "special dietary foods," serving a "prophylactic purpose" to maintain "adequate nutrition in the patients being treated in respect to these nutritional food factors which are so often partially missing in the diet due to poor food selection, or other reasons."

Presence in the capsules of the vitamins, niacinamide and riboflavin, concededly coal-tar derivatives, gives rise to the issue before us. During the course of the trial Government counsel said, "we claim that it [niacinamide] is a medicinal within Paragraph 28, and nothing else," and then added that the "same concession" applies to riboflavin. That statement, or concession (if it should be so-called), appearing, as it does, in the light of uncontradicted proof showing that niacinamide and riboflavin are the only coal-tar elements included in the merchandise in question, has the effect of definitely limiting the present issue to the sole question whether or not the capsules under consideration are "medicinals" of the kind contemplated by paragraph 28, *supra*.

In enacting paragraph 28, *supra*, Congress intended "to protect the domestic manufacturer of coal-tar products against similar competing foreign products, so that the domestic industry might become established," *United States* v. *General Dyestuff Corp.*, 19 C. C. P. A. 410, T. D. 45577. See also *Kuttroff, Pickhardt & Co., Inc.* v. *United States*, 21 C. C. P. A. 332, T. D. 46864.

Bearing in mind that legislative purpose in determining the limited issue before us, it should be observed that paragraph 28, *supra*, begins with the words, "Coal-tar products," carrying the conclusion that the medicinals embraced therein are only those in which the coal-tar element or elements supply the therapeutic properties, characterizing a medicinal substance.

This reasoning finds support in *E. Fougera & Co.* v. *United States*, 49 Treas. Dec. 986, T. D. 41632, a case which arose under the Tariff Act of 1922. It related to two medicinals, known as enesol and staphylasis, that contained a small amount of salicylic acid—a coal-tar derivative—which merely served as a preservative and without any medicinal effect. Excluding the merchandise from the provision for "other medicinals" in paragraph 28 of the Tariff Act of 1922 (prototype of paragraph 28 of the Tariff Act of 1930), the court said:

The term "and other medicinals" in paragraph 28 manifestly refers to coal-tar medicinals and it would seem a misnomer to speak of medicinals which only contain these small quantities of coal-tar material (salicylic acid) as coal-tar medicinals.

The importance of this quotation is its emphasis on the restricted scope of the controversial provision, "and other medicinals," involved herein.

In this case, primary consideration will be directed to the matter of use, the recognized controlling factor for tariff classification of medicinals, *United States* v. *Wm. Cooper & Nephews, Inc., supra*.

Counsel for defendant argue correctly that niacinamide and riboflavin, as coal-tar derivatives and susceptible of medicinal use, "if imported alone," would be classifiable under the provision for "and other medicinals" in paragraph 28, *supra*. But this is not the condition confronting us. Both substances, as disclosed by the record, are susceptible of medicinal use if administered in sufficiently large doses, but as they exist in these capsules, they impart no medicinal effect but react as nutritives along with several other ingredients, none of which is a coal-tar product. In other words, niacinamide and riboflavin, for the purposes of this case, are dietary foods, useful for nutritional value only. As such, and of themselves, they cannot establish for the present merchandise a classification of coal-tar medicinals, that otherwise cannot prevail.

It becomes unnecessary, from the foregoing discussion, to review the principle of *ejusdem generis*, suggested by counsel for plaintiff in their brief.

*Bayer Co., Inc.* v. *United States*, 13 Cust. Ct. 6, C. D. 859, cited by defendant, is not in point. There, the cinnamyl ephedrine hydrochloride in question was found to be a coal-tar medicinal *per se*. The

case turned on the court's holding that suitability for use, rather than chief use, was sufficient for classification as a medicinal under paragraph 28, *supra*.

For the reasons herein set forth, we hold that the darthronol and heptuna capsules in question are not coal-tar medicinals as contemplated by paragraph 28, *supra*, but are within the class of drugs or medicinal substances provided for in paragraph 23, *supra*, as claimed.

In accordance with the agreement between the parties, appraisement of the merchandise, based upon the collector's classification under said paragraph 28, is held to be null and void, and pursuant to the provisions of amended section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501), now 28 U. S. C. (1946 ed., Supp. III) § 2636 (d), the case shall be referred for further proceedings to a single judge sitting in reappraisement, the assignment to be made to such docket as the chief judge, in his discretion, deems proper. Judgment will issue accordingly.