SANDOZ CHEMICAL WORKS, INC. *v.* UNITED STATES (No. 5095)*

*C.A.D. 815.

United States Court of Customs and Patent Appeals, January 16, 1963

*Eugene R. Pickrell* (*Richard F. Weeks*, of counsel) for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster, Richard H. Welsh*, of counsel) for the United States.

[Oral argument November 8, 1962 ; submitted on brief by appellant ; and Mr. Auster]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges

ALMOND, Judge, delivered the opinion of the court :

This is an ▇ appeal by Sandoz Chemical Works, Inc., importer, from a judgment of the United States Customs Court, First Division, C.D. 2284, overruling the protest against the classification of the Collector of Customs at New York. The merchandise invoiced as methylphenylethylhydantoin, bearing the trade name Mesantoin, was classified as a coal-tar medicinal under the provisions of paragraph 28(a) of the Tariff Act of 1930, imposing a duty assessment of 45 per centum ad valorem and 7 cents per pound.

The appellant asserts that the merchandise is properly dutiable under paragraph 5 of said act as a medicinal preparation not specially provided for.

Paragraph 28(a) and paragraph 1651, Tariff Act of 1930, insofar as here relevant, provide :

Par. 28.   Coal-tar products :

(a) * * * acetanilide suitable for medicinal use, acetphenetidine, acetylsalicylic acid, antipyrine, benzaldehyde suitable for medicinal use, benzoic acid suitable for medicinal use, beta-naphthol suitable for medicinal use, guaiacol and its derivatives, phenolphthalein, resorcinol suitable for medicinal use, salicylic acid and its salts suitable for medicinal use, salol, *and other medicinals;* * * * all the foregoing products provided for in this paragraph, when obtained, derived, or manufactured in whole or in part from any of the products provided

for in paragraph 27 or 1651; * * * 45 per centum ad valorem and 7 cents per pound.   (Italics ours.)

Par. 1651.   Coal-tar products: * * * benzene, * * *.

Paragraph 5, Tariff Act of 1930 is as follows:

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

It is the contention of the appellant that the words "and other medicinals" are indicative of legislative intent to embrace only those medicinals which are *ejusdem generis* with the twelve *eo nomine* substances, to wit, acetanilide, acetphenetidine, acetylsalicylic acid, antipyrine, benzaldehyde, benzoic acid, beta-naphthol, guaiacol, phenolphthalein, resorcinol, salicylic acid, salol, with the further limitation that the words "and other medicinals" embrace only those medicinal preparations wherein the coal-tar ingredient (benzene) contributes to the therapeutic value of the compound.

The appellee takes issue contending that Mesantoin is a medicinal preparation derived and manufactured in whole or in part from *benzene*, and is therefore properly classifiable under paragraph 28 (a), *supra*, thus rendering immaterial the question as to whether or not the coal-tar ingredient contributes in any degree to the therapeutic efficacy of Mesantoin.   While asserting the immateriality of therapeutic contribution, the appellee contends that the ingredient does contribute to the effectiveness of the product, as found by the Customs Court, and that while the rule of *ejusdem generis* is not applicable in the instant case, the merchandise is *ejusdem generis* with the medicinals named in paragraph 28 (a), *supra*.

Proceeding now to discuss and correlate the relevant facts and the law applicable thereto in the light of the issues joined, the Customs Court found that the constituents of Mesantoin, as its chemical designation methylphenylethylhydantoin implies, are a methyl group, a phenyl group, an ethyl group and a hydantoin group.   Phenol is a derivative of benzene, a coal-tar substance named in paragraph 1651 of the Tariff Act of 1930.   One of the starting materials in the preparation of Mesantoin is a ketone known as propiophenone (phenylethylketone) which contains a phenyl group.   It is undisputed that Mesantoin is derived in part from benzene, a coal-tar derivative, and is chiefly used for medicinal purposes, *viz*, the treatment of epilepsy.

The conclusion seems inescapable to us that the admitted facts would bring the merchandise under consideration within the ambit of paragraph 28, Tariff Act of 1930.   The unequivocal language of the statute "and other medicinals; * * * when obtained, derived, or manufactured in whole or in part from any of the products provided for in paragraph 27 or 1651; * * *" is devoid of doubt or ambiguity, thus precluding resort to the rules of statutory construction

to arrive at legislative intendment.  ▮  It was within the province of the Congress to restrict, qualify or impose conditional facets relating to the purpose and scope of the statute. It did not see fit so to do. It is not within the province of this court to amend or to read into the statute by construction that which is not there.

In support of the contention that the words "and other medicinals" embrace only those medicinal preparations wherein the coal-tar ingredient contributes to the therapeutic value of the compound, the appellant cites *Roerig & Co.* v. *United States*, 26 Cust. Ct. 131, C.D. 1313, and *Fougera & Co.* v. *United States*, 49 T.D. 986, T.D. 41632. The *Roerig* and *Fougera* cases are not in point because in each of these cases the medicinal preparation involved was a *mixture* of chemical compounds. The coal-tar derivative ingredient of the mixture was not the ingredient imparting therapeutic properties to the preparation. Here, however, the merchandise is a *single* chemical compound, Mesantoin, and not a mixture of ingredients.

Appellant urges us to dissect the chemical compound and attribute therapeutic properties to only one radical or group of which it is composed. Clearly, the compound is used as a whole and the molecule cannot be split up into its component parts in the same manner that the separate elements of a mixture may be segregated. By definition, Mesantoin contains the phenyl group, a coal-tar derivative. We cannot say that Mesantoin without the phenyl group would be therapeutic because it does not even exist without the phenyl group. In the *Roerig* and *Fougera* cases, *supra*, on the other hand, the medicinal preparation lost none of its therapeutic properties by the absence of the coal-tar derivative.

As this court said in *Plant Products Corp.* v. *United States*, 44 CCPA (Customs) 183, 185; C.A.D. 658:

* * * We agree with the conclusion reached that the insecticidal properties of Parathion are due to the *molecule as a whole, and that the coal-tar portion is essential to such properties.* (Italics added.)

In this connection, the Customs Court said:

Whether or not an anticonvulsant effective against epilepsy has been or can be produced without the employment of a phenol group is not, in our opinion, decisive in our present determination. The fact of the matter is that, in the case at bar, the imported product, Mesantoin, does contain the phenol group and the record, we believe, is sufficiently conclusive to establish that the phenol group contained therein contributes to the effectiveness of the finished product. As testified to by plaintiff's witness Maresca, the Mesantoin has a phenol group, the $C_6H_5$ group in the structural formula, which comes from the starting material, propiophenone or phenylethylketone. This is the benzene ring structure appearing in phenol form * * *, and "is a coal-tar derivative" * * *. In this connection, the same witness testified with respect to this starting material, propiophenone, that "it winds up in the end product. The process called for it" * * *, stating, in this connection, that "This whole thing is a compound * * * Mesantoin" * * *. He further stated, on cross-examination, that if any other ketone

were used in the process, such as ethylmethylketone instead of phenylethylketone, a hydantoin derivative would be formed, but not this particular hydantoin, Mesantoin * * *. Accordingly, it appears from the record that all of the groupings that go to make up the finished product in the case at bar contribute to its ultimate therapeutic property.

We do not accept the validity of appellant's contention relative to the essentiality of the therapeutic value of the coal-tar ingredient of the compound. We find that the evidence adduced in the trial court amply supports the court's finding of fact and its conclusions of law are supported by apposite authority.

It is conceded, as well as indisputably established by the record, that the imported product, Mesantoin, is a medicinal compound. It is of no moment to a proper resolution of the issues here whether the product is ethical or proprietary. We find it difficult to believe that Congress intended only to provide for proprietary drugs in paragraph 28(a), and not ethical drugs. The distinction is artificial in this context and has no basis in the statute.

As heretofore noted, appellant contends that the imported product is not *ejusdem generis* with the named medicinals in paragraph 28(a), *supra*, and therefore not embraced by the provision covering the named medicinals.

The rule of *ejusdem generis* is stated in Crawford's "The Construction of Statutes" (1940), Section 191, as follows:

Where general words follow the designation of particular things, or classes of persons or subjects, the general words will usually be construed to include only those persons or things of the same class or general nature as those specifically enumerated.

*Ejusdem generis* is a rule of construction invoked, where legislative intention is in doubt or beclouded by ambiguity, as an aid in ascertaining the intention of the legislature. It is not invoked to narrow, limit or circumscribe an enactment and never invoked if the intention of the legislature can be ascertained without resort thereto.

In *United States* v. *Herman H. Sticht & Co.*, 22 CCPA (Customs) 40, 44, T.D. 47048, the court said:

* * * The master rule of construction, in the consideration of all statutes is so to interpret them as to carry out the legislative intent, and any rule of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. *United States* v. *Clay Adams Co., Inc.*, 20 C.C.P.A. (Customs) 285, T.D. 46078 * * *.

As heretofore indicated, we find no ambiguity in the statute under consideration and hence no occasion to resort to rules of statutory construction as an aid in ascertaining the intention of the legislature. However, the matter of legislative intent with respect to the coal-tar provisions in general, and the medicinal provision of paragraph 28(a) in particular, would seem to have been settled by the courts.

In *Kuttroff, Pickhardt & Co., Inc.* v. *United States*, 21 CCPA (Customs) 332, T.D. 46864, this court stated:

We have in mind the history of the times, prior to and on the date of the enactment of the provisions here under consideration, and what Congress sought to accomplish by the legislation, all of which is so generally known as to require no recital here. It will be noted that the first words in said paragraphs 27 and 28 are "Coal-tar products:" and that following this term is a recital, in great detail, of the different articles and materials which it sought to bring within the paragraphs. A study of the two paragraphs and the act as a whole prompts the conclusion that Congress was anxious to include within the said paragraphs most, if not all, coal-tar products, except those which were provided for elsewhere in the act. To accomplish this purpose it named definitely a great number of articles and materials, and then, by several general, comprehensive catch-all provisions, further greatly broadened and enlarged the scope of the paragraphs.

In *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA (Customs) 152, 158, C.A.D. 623, this court said:

In view of the foregoing, it is our opinion that Congress meant the word "medicinal," as used in the statute, to be any substance which is capable of being used in the medical profession for either diagnosis or treatment of disease, this meaning being entirely consistent with the dictionary definitions of the term.

Under the circumstances revealed by the record, we decide that the merchandise involved is properly classified under paragraph 28(a), Tariff Act of 1930.

In view of the foregoing, we *affirm* the decision of the Customs Court.